# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

BRYAN BURWELL,

    Defendant.

**Criminal No. 04cr355-05 (CKK)**
**(Civil Action No. 14-270)**

## MEMORANDUM OPINION
(January 15, 2015)

On July 15, 2005, Bryan Burwell ("Burwell") was convicted by a jury in this Court of: conspiracy to conduct and participate, directly and indirectly, in the affairs of an enterprise, through a pattern of racketeering activity ("Count I"), including the armed robbery of the Industrial Bank located at 2012 Rhode Island Avenue, N.E., Washington, D.C., on or about June 12, 2004 ("Racketeering Act 3") and the armed robbery of the Chevy Chase Bank located at 5823 Eastern Avenue, Chillum, Maryland, on or about May 27, 2004 ("Racketeering Act 6"); conspiracy to commit offenses against the United States, that is, armed robberies of banks the deposits of which were then insured by the Federal Deposit Insurance Corporation ("Count II"); armed robbery of the Industrial Bank on or about June 12, 2004 ("Count X"); and using and carrying a firearm during and in relation to a crime of violence on or about June 12, 2004 ("Count XI"). Presently before the Court is Burwell's *pro se* [822] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Upon a searching review of the parties' submissions,[1] the relevant authorities, and the record as a whole, the Court finds no grounds for

---

[1] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents: Def.'s Mot. to Vacate Sentence ("Def.'s Mot."), ECF No. [822]; Def.'s Memo. in Support of Mot. ("Def.'s Memo."), ECF No. [822-1]; Govt.'s Opp'n

setting aside Burwell's conviction and sentence at this time. However, the Court shall require further briefing on the sole issue of whether Burwell's trial counsel was ineffective by failing to investigate and interview two witnesses prior to trial, and shall hold in abeyance the motion only with respect to this claim. Burwell's motion is denied as to all other claims as described herein. Accordingly, the Court shall DENY IN PART and HOLD IN ABEYANCE Burwell's [822] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

## I. BACKGROUND

On August 3, 2004, a federal grand jury indicted Burwell and seven codefendants in connection with a string of bank robberies that occurred in the District of Columbia and Maryland.[2]   Indictment, ECF No. [10].   The United States Court of Appeals for District of Columbia Circuit ("D.C. Circuit") described the factual scenario:

> [Burwell and his codefendants] indulged in a violent crime spree throughout the District of Columbia metro area that lasted for nearly a year and a half. Appellants, who began by cultivating and selling marijuana, evolved into a ring that committed armed bank robberies, using stolen vehicles to travel to the targeted banks and make their escapes. By the summer of 2004, the robbers had developed a signature style. The gang wore bullet-proof vests, masks, and gloves, and relied on superior fire power, preferring to use military weapons like AK-47s instead of handguns because they surmised the metropolitan police "wouldn't respond" when Appellants "robb[ed] banks with assault weapons." The gang made use of several stolen vehicles, strategically placed along the get-away-route, for each robbery. The robbers would serially abandon the vehicles, often torching them in an attempt to destroy any forensic evidence that might be left behind.

*United States v. Burwell*, 642 F.3d 1062, 1064-65 (D.C. Cir. 2011).   The matter proceeded to trial in this Court, and Burwell was tried alongside five other codefendants. On July 15, 2005, a

---

to Def.'s Mot. to Vacate Sentence ("Govt.'s Opp'n"), ECF No. [827]; Def.'s Reply Brief ("Def.'s Reply"), ECF No [851]; and transcripts of status hearings and trial.
    [2] An eighth codefendant later was added by virtue of a superseding indictment. Superseding Indictment, ECF No. [19].

jury convicted Burwell on all four counts upon which he was charged in the indictment.  Verdict Form, ECF No. [474].

On April 28, 2006, this Court sentenced Burwell to 135 months of imprisonment on Count I, 60 months of imprisonment on Count II, and 135 months of imprisonment on Count X to run concurrently to each other.  The Court also sentenced Burwell to 360 months of imprisonment on Count XI to run consecutive to all counts. *See* Judgment in a Criminal Case, ECF No. [615].  Burwell filed a timely appeal of his conviction and on April 29, 2011, the D.C. Circuit affirmed Burwell's conviction in a published opinion.  *United States v. Burwell*, 642 F.3d 1062 (D.C. Cir. 2011).  The D.C. Circuit then granted Burwell's petition for rehearing *en banc* on the issue of whether 18 U.S.C. § 924(c)(1)(B)(ii), the statute governing Count XI, requires the government to prove that the defendant knew that the weapon he was carrying while committing a crime of violence was capable of firing automatically.  *United States v. Burwell*, 690 F.3d 500, 502 (D.C. Cir. 2012).   In a split opinion, the D.C. Circuit held that the statute in question did not require that the defendant know that the weapon he used, carried, or possessed was capable of firing automatically, and, accordingly, the D.C. Circuit affirmed Burwell's conviction.  *Id.* at 516.  Burwell filed a petition for writ of certiorari which was denied by the Supreme Court of the United States.  *United States v. Burwell*, -- U.S. --, 133 S. Ct. 1459 (2013).  Burwell currently is serving his sentence.

Pending before the Court is Burwell's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  Burwell's motion is premised on overarching ineffective assistance of counsel claims at four stages of the proceedings, pre-trial, trial, post-trial, and appeal, by his trial counsel, Anthony D. Martin, and his appellate counsel, Robert S. Becker.  Specifically,

Burwell claims that his counsel rendered him ineffective assistance by: (1) failing to challenge the violation of his statutory right to a speedy trial prior to trial; (2) failing to raise double jeopardy and multiplicity challenges to the indictment prior to trial and failing to move to dismiss based on this challenge during trial; (3) failing to raise a Confrontation Clause challenge to certain evidence during trial and on appeal; (4) generally providing a "poor overall performance" at trial; (5) failing to allow Burwell to exercise his right to testify at trial; (6) failing to challenge government misconduct at trial and on appeal; (7) failing to give an effective closing argument at trial; (8) failing to request an informant jury instruction at trial; (9) failing to request a theory-of-defense instruction at trial; (10) failing to request polling of the jury at trial; (11) failing to properly challenge juror misconduct and bias at trial and on appeal; and (12) failing to conduct pre-trial interviews of potential defense witnesses.  Burwell also claims that the jury instructions related to Count XI were erroneous in light of the Supreme Court's holding in *Rosemond v. United States*, -- U.S. --, 134 S. Ct. 1240 (2014).

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal.  "[T]o obtain collateral relief a

4

prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Nonetheless, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

A prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001) (citation omitted).

A defendant claiming ineffective assistance of counsel must show (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, -- U.S. --, --, 131 S. Ct. 770, 787 (2011). "The reasonableness of counsel's actions may be

determined or substantially influenced by the defendant's own statements or actions . . . .
[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment
of . . . counsel's other litigation decisions." *Strickland*, 466 U.S. at 691.   In evaluating
ineffective assistance of counsel claims, the Court must give consideration to "counsel's overall
performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong
presumption that counsel's conduct falls within the wide range of reasonable professional
assistance," *Strickland*, 466 U.S. at 689.   Moreover, "[t]he defendant must show that there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different.   A reasonable probability is a probability sufficient to undermine
confidence in the outcome." *Id*. at 694.

### III.  DISCUSSION

A district court may deny a Section 2255 motion without a hearing when "the motion and
files and records of the case conclusively show that the prisoner is entitled to no relief."   28
U.S.C. § 2255(b).   "'The decision whether to hold a hearing is committed to the district court's
discretion, particularly when, as here, the judge who is considering the § 2255 motion also
presided over the proceeding in which the petitioner claims to have been prejudiced.'"   *United
States v. Orleans-Lindsey*, 572 F. Supp. 2d 144, 166 (D.D.C. 2008), *appeal dismissed*, No. 08-
3089, 2009 U.S. App. LEXIS 20833 (D.C. Cir. Sept. 18, 2009) (quoting *Fears v. United States*,
No. Civ. A. 06-0086 (JDB), 2006 WL 763080, at *2 (D.D.C. Mar. 24, 2006) (citations omitted));
*see also United States v. Agramonte*, 366 F. Supp. 2d 83, 85 (D.D.C. 2005), *aff'd*, 304 Fed.
App'x 877 (D.C. Cir. 2008).   "The judge's own recollection of the events at issue may enable
him summarily to deny a Section 2255 motion." *Agramonte*, 366 F. Supp. 2d at 85 (citing

*United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 915 (1992)).  To warrant a hearing, the petitioner's Section 2255 motion must "raise[] 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection.'" *Pollard*, 959 F.2d at 1031 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

Based on a thorough review of the parties' pleadings and the entire record in the criminal proceeding, the Court finds that there is no need for an evidentiary hearing on the instant motion at this time.  However, the Court shall reserve its ruling on the issue of whether a hearing is necessary based on Burwell's claim that his counsel failed to properly investigate specific witnesses prior to trial until further briefing is complete.  As explained below, Burwell has not proffered detailed and factual allegations outside of the record such that a hearing is required on all other issues raised in his motion.  Accordingly, the Court shall render its findings on these claims based on the parties' pleadings and the record.

Burwell raises 12 ineffective assistance of counsel claims related to counsel allegedly: (1) failing to challenge the violation of his statutory right to a speedy trial prior to trial; (2) failing to raise double jeopardy and multiplicity challenges to the indictment prior to trial and failing to move to dismiss based on this challenge during trial; (3) failing to raise a Confrontation Clause challenge to certain evidence during trial and on appeal; (4) generally providing a "poor overall performance" at trial; (5) failing to allow Burwell to exercise his right to testify at trial; (6) failing to challenge government misconduct at trial and on appeal; (7) failing to give an effective closing argument at trial; (8) failing to request an informant jury instruction at trial; (9) failing to request a theory-of-defense instruction at trial; (10) failing to request polling of the jury at trial;

(11) failing to properly challenge juror misconduct and bias at trial and on appeal; and (12) failing to conduct pre-trial interviews of potential defense witnesses. Further, Burwell claims that the jury instructions related to Count XI were erroneous in light of recent Supreme Court precedent. The Court shall address each claim in turn.

### A. *Speedy Trial Challenge*[3]

Burwell alleges that his trial counsel was ineffective by failing to move to dismiss in the instant action based on a violation of the Speedy Trial Act.[4] Def.'s Memo. at 11-15; Def.'s Reply at 2-4. Pursuant to 18 U.S.C. § 3161(c)(1), a trial for a defendant who has pled not guilty must commence within 70 days from the filing and making public of the indictment, or from the date that Defendant appeared before a judicial officer of the court in which the charge is pending, whichever is later. In a case involving multiple defendants, the speedy trial clock resets upon the initial appearance of a new defendant. *United States v. Van Smith*, 530 F.3d 967, 969-70 (D.C. Cir. 2008). In other words, all codefendants share the speedy trial computation of the latest codefendant. *Id.* (quoting *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986)). However, pursuant to section 3161(h), there are several scenarios under which the Court may toll this 70-day time period.

In the instant action, Burwell was indicted pursuant to a sealed indictment on August 3,

---

[3] The Court notes that in this section of his motion, Burwell references an "Exhibit 1" that is not attached to his motion. Def.'s Memo. at 14.

[4] Burwell only appears to allege a violation of his statutory speedy trial rights and not his constitutional speedy trial rights under the Sixth Amendment. *See generally Barker v. Wingo*, 407 U.S. 514, 531 (1972). Accordingly, the Court shall address only this issue as it relates to his statutory rights.

2004, and arraigned on August 6, 2004.[5]  Marvin Palmer was the last of Burwell's codefendants to be arrested and arraigned.  Palmer's arrest and arraignment occurred on August 25, 2004. Accordingly, August 25, 2004 is the operative date under the Speedy Trial Act for calculating the 70-day period for all codefendants in this matter, *see Van Smith*, 530 F.3d at 969-70, and Burwell's trial commenced on April 5, 2005, 223 days from this date.

However, on September 27, 2004, 33 days from the operative date, the Court held a status hearing with Burwell and his seven codefendants present, to discuss the Government's Notice to the Court of Plan, in Consultation with Defense Counsel, for Future Actions in this Case.  *See* Notice to the Court of Plan, ECF No. [90].  At the hearing, Burwell's counsel, indicated on the record in the presence of Burwell, that this was a complex case under the Speedy Trial Act, allowing for tolling of the Act for a reasonable period of time in order to prepare the case.  Order (Oct. 4, 2004), ECF No. [92].  Indeed, Mr. Martin expressly indicated that he had spoken with his client about the likelihood that the case would be deemed complex and that the trial probably would be set in 2005.  Tr. 22:25—23:2 (Sept. 27, 2004), ECF No. [675].  Further, Mr. Martin stated, "I believe that at this point all counsel have had a chance to

---

[5] In his reply, Burwell also appears to assert that his trial counsel should have argued that the Speedy Trial Act was violated on the basis of the filing of the superseding indictments in this matter on November 9, 2004, and February 15, 2005, *see* Def.'s Reply at 4, because the Act requires the filing of an indictment within 30 days of the defendant's arrest, *see* 18 U.S.C. § 3161(b) (2004).  This claim fails for two reasons. First, the Court need not consider arguments raised for the first time by Burwell in his reply because the Government has no opportunity to respond. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008).  Further, Burwell's claim fails because a superseding indictment filed more than 30 days after an arrest does not violate the Speedy Trial Act when, as here, the original indictment was filed within the 30-day time period. *United States v. Walker*, 545 F.3d 1081, 1086 (D.C. Cir. 2008), *cert. denied*, 557 U.S. 945 (2009).  Accordingly, Burwell cannot establish that he was prejudiced by his counsel's failure to move to dismiss the indictment on this basis.

talk with their clients regarding the complexity designation and how that affects their speedy trial issue."[6] *Id.* at 23:3-5.

Following the hearing on October 4, 2004, 40 days from the operative Speedy Trial Act date, the Court entered a written order tolling the time period under the Act pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (B)(i), (B)(ii) & B(iv) (2004). Order (Oct. 4, 2004).  Specifically, the Court cited the nature of the case (eight codefendants and an alleged conspiracy to rob six separate banks on six different dates), the possible testimony (expert testimony on DNA, hair, fingerprint, and firearm analysis, and testimony of lay witnesses from the banks), as well as the number of potential witnesses at trial (potentially sixty government witnesses).  *Id.* at 1-2.  In its order, the Court noted that it was "the consensus of the parties and the Court that it would be unlikely that this case would be ready to proceed to trial within the next several months due to the extensive discovery involved, the complexity of the case, and the breadth of forensic evidence requiring expert testimony." *Id.* at 2.

The Court, specifically with the consent of Defendants, their counsel, and the Government, ultimately held that: (1) the case was so unusual or so complex, due to the nature of the prosecution that it was unreasonable to expect adequate preparation for pretrial proceedings

---

[6] In the Government's Notice to the Court of Plan, In Consultation with Defense Counsel, for Future Actions in This Case, filed prior to the hearing, the Government noted:

> Mr. Beshouri [codefendant's counsel] informed the government that several of the defense counsel concur that the case is complex under the Speedy Trial Act. Other defense counsel, however, need to speak with their clients about their positions on this issue. They can advise the Court at the status hearing this coming Monday of their position on this matter.

Notice to the Court of Plan at 3.

or for the trial itself within the time limits established under the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(A),[7] (B)(ii) (2004)[8]; (2) the failure to grant the requested additional time to prepare the case would result in a miscarriage of justice to the Defendants, 18 U.S.C. § 3161(h)(8)(B)(i) (2004)[9]; and (3) the failure to grant the requested additional time would deny the Defendants reasonable time necessary for the effective preparation of the case, taking into account the exercise of due diligence, 18 U.S.C. § 3161(h)(8)(B)(iv) (2004)[10]. *Id.* at 2-3. Based on these

---

[7] Pursuant to 18 U.S.C. § 3161(h)(8)(A) (2004), the statute provides:

Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

[8] Pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii) (2004), a judge considering whether to grant a continuance shall consider "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."

[9] Pursuant to 18 U.S.C. § 3161(h)(8)(B)(i) (2004), a judge considering whether to grant a continuance shall consider "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice."

[10] Pursuant to 18 U.S.C. § 3161(h)(8)(B)(iv) (2004), a judge considering whether to grant a continuance shall consider:

Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex . . . . would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government

findings, the Court concluded that the ends of justice required that the case proceed to trial outside of the 70-day period prescribed by the Speedy Trial Act.[11]  *Id.* at 3.

Given the Court's specific written findings tolling the time frame under the Speedy Trial Act in compliance with the requirements of 18 U.S.C. § 3161(h) (2004), the Court finds that Burwell's related ineffective assistance of counsel claim fails.  Burwell argues that the requirements of an "ends-of-justice" continuance were not met because the grant of a continuance allowed the Government to bolster its case against Burwell by giving the Government time to negotiate with codefendants who testified against Burwell.  Def.'s Memo. at 14.  While one reason for granting the continuance was to give the prosecution time to prepare because of the complex nature of the case, this characterization is inaccurate because the continuance also specifically was granted to give the defense time to effectively prepare their case and to avoid a miscarriage of justice.  Accordingly, it is clear that the Court granted the continuance only after specifically finding that it benefited both the Government and the Defendants.

Burwell also cites *Zedner v. United States*, 547 U.S. 489 (2006), in support of his argument.  However, *Zedner* is distinguishable from the instant action.  The Supreme Court in *Zender* addressed the propriety of a district court's grant of a continuance when the court did not

---

continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

[11]  Burwell seems to indicate in some instances that the Court reached the opposite holding in this Order, i.e. finding that the trial must commence within the 70-day period.  *See* Def.'s Memo. at 13-14.  This is contrary to the plain language of the written Order.  Order (Oct. 4, 2004), at 3 ("[T]he ends of justice require that this case proceed to trial later than seventy days from the date the Defendants were indicted.").

make express findings on the record either orally or in writing regarding the end-of-justice balance. *Zedner*, 547 U.S. at 506.  Here, it is clear that the Court made formal written findings on this issue close in time to the hearing and, as such, *Zedner* is distinguishable.

Finally, Burwell asserts that "at no point did counsel ever explain to Petitioner his right to a speedy trial, or the mandatory dismiss[al] for that violation  . . . . Had counsel done so in this case, Petitioner would have insisted that a motion to dismiss was filed."  Def.'s Memo. at 14. Even assuming *arguendo* that Burwell's counsel did commit an error by not advising of him of his statutory Speedy Trial rights, and that his counsel misrepresented that he had explained his rights to his client and that his client had consented to the designation of the case as complex, Burwell was not prejudiced by this error.  The Court tolled the time under the Speedy Trial Act pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (B)(i), (B)(ii) & B(iv) (2004).  None of those provisions require the consent of the defendant.  Rather, a party or the Court may move for tolling under these provisions, but the Court applying the appropriate legal standard must determine whether such a continuance is permissible.  Accordingly, even if Burwell's counsel had objected to the tolling of the time prior to the entry of the Court's findings, it is not reasonably likely that this objection would have dissuaded the Court from finding that the case was complex and that all parties needed additional time to prepare given that this was a case involving several codefendants alleged to have been involved in a conspiracy that included the armed robbery of six different banks.  Further, if Burwell's counsel moved to dismiss the indictment on the basis that there was a violation of the Speedy Trial Act, it is not reasonable to conclude that the Court would have dismissed the indictment given that it followed the required procedures under the Act for tolling.  *See* Order (Oct. 4, 2004).  Finally, the Court notes that Burwell and his

codefendants filed 40 substantive pre-trial motions which added to the complexity of the case

and independently tolled the Speedy Trial clock.[12] *See* 18 U.S.C. § 3161(h)(1)(F) (2004).

Accordingly, the Court concludes that there was no Speedy Trial Act violation in the instant

---

[12] Perkins' Mot. for Discovery Stmt. of Co-Defendants and Co-Conspirators, ECF No. [128]; Perkins' Mot. for Disclosure of Favorable Evid. Against Witnesses Not Called to the Stand by Govt., ECF No. [129]; Perkins' Mot. for Disclosure of Identity of Confidential Informants, ECF No. [130]; Perkins' Mot. to Disclose All Instances Where Witnesses were Interviewed Jointly, ECF No. [131]; Perkins' Mot. for Relief from Prejudicial Joinder, ECF No. [211]; Jt. Mot. in Limine to Exclude Alleged Bad Acts and Uncharged Misconduct, ECF No. [134]; Aguiar's Mot. for Pretrial Identification and Production of Jencks Material, ECF No. [135]; Aguiar's Mot. to Sever Defendants and/or Mot. to Sever Counts, ECF No. [136]; Aguiar's Mot. to Disclose Identities of Each Confidential Informant Regardless of if they will be Called for Trial, ECF No. [137]; Burwell's Mot. for Notice of Intent to Introduce Uncharged Misconduct and Prior Convictions, ECF No. [138]; Burwell's Mot. to Compel Disclosure of Info. Regarding Confidential Informants, Witnesses and Cooperating Criminals, ECF No. [139]; Burwell's Mot. to Strike Alias, ECF No. [140]; Burwell's Mot. to Preserve Notes, Report and Evid., ECF No. [141]; Burwell's Mot. to Adopt Mot. filed on behalf of Co-Defendants, ECF No. [142]; Burwell's Mot. to Reveal the Identity of Informant(s) and the Basis of their Reliability, ECF No. [143]; Burwell's Mot. to Sever Count(s) and to Try Co-Defendants Separately, ECF No. [144]; Burwell's Mot. in Limine regarding Video Tape Evid., ECF No. [145]; Palmer's Mot. to Suppress Identification Evid., ECF No. [147]; Palmer's Mot. in Limine to Exclude Def. Marvin Palmer's Incarcerated Status in New York, ECF No. [149]; Palmer's Mot. to Adopt Codefendant's Mots., ECF No. [151]; Stoddard's Mot. for Bill of Particulars, ECF No. [152]; Stoddard's Mot. for Pretrial *James* Hrg., ECF No. [153]; Stoddard's Mot. to Strike, ECF No. [154]; Stoddard' Mot. to Bifurcate Trial, ECF No. [155]; Stoddard's Mot. to Sever Counts, ECF No. [156]; Stoddard's Mot. to Dismiss Count One of the Indictment, ECF No. [157]; Stoddard's Mot. to Suppress, ECF No. [158]; Stoddard's Mot. to Suppress Identification Evid., ECF No. [159]; Stoddard's Mot. to Suppress Evid., ECF No. [160]; Stoddard's Mot. to Sever Defs., ECF No. [161]; Morrow's Mot. to Suppress Identification Evid., ECF No. [162]; Morrow's Mot. to Identify Witnesses with Juvenile Adjudications and pending Juvenile Proceedings and to Inspect Juvenile Files, ECF No. [164]; Jt. Mot. for Relief from Improper Joinder, and Mot. for Severance of Offenses and/or Defs., ECF No. [165]; Jt. Mot. for In Camera Review of Grand Jury Testimony to Determine the Existence of a Racketeering Enterprise, ECF No. [166]; Perkins' Mot. to Adopt Mots. Filed on Behalf of Co-Defendants, ECF No. [167]; Perkins' Mot. to Suppress All Evid. Seized pursuant to a Constitutionally Defective Warrant, ECF No. [168]; Sld. Jt. Def. Motion to Dismiss Indictment, ECF No. [172]; Aguiar's Motion to Prevent Govt. from Introducing Fed. R. 404(b) Evid. Against Def., ECF No. [464]; Perkins' Mot. for Change of Venue, ECF No. [196]; Palmer's Mot. for Determination of Crawford Parameters, ECF No. [226].  Additionally, the Government also filed one pre-trial motion. Govt.'s Motion in Limine and First Notice of Intention to Introduce Evid. Pursuant to Fed. R. Evid. 404(b), ECF No. [133].

action regardless of the consent issue.

Given that the Court followed the required process for tolling time under the Speedy Trial Act regardless of whether Burwell consented to the tolling, Burwell cannot establish that his counsel acted in an objectively unreasonable manner by failing to move to dismiss the case on the basis that the Court violated the 70-day requirement of the Act, nor can he establish that there is a reasonable likelihood of a different result had trial counsel made such a motion.[13] Accordingly, Burwell's ineffective assistance of counsel claim premised on trial counsel's failure to move to dismiss the instant action on the basis of a Speedy Trial Act violation is without merit.

## B. *Double Jeopardy and Multiplicity Challenges*

Burwell next argues that his trial counsel was ineffective by failing to raise double jeopardy and multiplicity challenges to the indictment prior to trial and for failing to move to dismiss the indictment based on this challenge. Def.'s Memo. at 15-18, 21, 24-25; Def.'s Reply at 1-2. Specifically, Burwell objects to Count I of the indictment, conspiracy to participate in a racketeer influenced corrupt organization ("RICO") pursuant to 18 U.S.C. § 1962(d), which Burwell argues is multiplicitous of the other charged robbery offenses. Def.'s Memo. at 15-18, 21; Def.'s Reply at 2. Burwell also argues that his multiple charges under 18 U.S.C. § 924(c), using and carrying a firearm during and in relation to a crime of violence, were improper. Def.'s Memo. at 16-17; Def.'s Reply at 2. Burwell's claims for ineffective assistance of counsel on

---

[13] Burwell also appears to argue that the Court tolled the time under the Speedy Trial Act due to the Government's filing of a superseding indictment. Def.'s Memo. at 13. However, it is clear from the record that this was not the basis for the tolling and rather, the tolling was done pursuant to the Court's findings under 18 U.S.C. § 3161(h)(8) (2004).

these issues fail because: (1) his trial counsel did challenge the RICO charge, Count I, prior to trial on the grounds that it was multiplicitous and Burwell raises no additional valid arguments that his counsel should have advanced;[14] and (2) Burwell was only charged with one count under 18 U.S.C. § 924(c), Count XI, and accordingly, he cannot argue that he was improperly charged with multiple offenses under section 924(c).

Turning first to the RICO charge, Burwell's counsel filed a Joint Defense Motion to Dismiss the Indictment due to Multiplicitous and Duplicitous Charging prior to trial. Sealed Jt. Def.'s Mot. to Dismiss Indictment, ECF No. [172].  The Court issued a Memorandum Opinion on March 16, 2005, finding that Burwell's arguments were without merit.  Memo. Op. (Mar. 16, 2005), at 13-22, ECF No. [437].  While Burwell at one point concedes that his trial counsel actually did argue that the RICO charge constituted double jeopardy and a multiplicitous charge, Burwell then asserts that his trial counsel's "arguments were deficient," and "[h]ad counsel made the proper arguments there is reasonable probability that the substantive count would have been dismissed." Def.'s Memo. at 25.  Burwell appears to raise two arguments as to the deficiency of the arguments raised in the motion: (1) trial counsel should have relied on different case law to establish that the RICO charge was multiplicitous of other charged offenses; and (2) trial counsel should have argued that the RICO charge and the charge of armed robbery of the Industrial Bank were multiplicitious.  The Court shall address each argument in turn.

Burwell asserts that the RICO charge required proof that Burwell: committed the

---

[14] On appeal, Burwell challenged the sufficiency of the evidence presented at trial with relation to the RICO charge.  Jt. Brief of the Appellants at 74-83, Burwell et al v. United States, No. 06-3071 (D.C. Cir. Oct. 2, 2009).  The D.C. Circuit found the challenge to be without merit and, accordingly, did not discuss it in its opinion.  *See United States v. Burwell*, 642 F.3d 1062, 1065 (D.C. Cir. 2011).

robberies at issue; protected members of the enterprise; maintained weapons, body armor, and money of the enterprise in safe places; and retaliated against persons who interfered with the operation of the enterprise.   Burwell argues that this conduct also forms the bases of other charged offenses for which Burwell was convicted and, accordingly, the RICO charge violates the Double Jeopardy clause.   Def.'s Memo. at 15.   Burwell provides a lengthy quote from the Second Circuit's holding in *United States v. Basciano*, 599 F.3d 184 (2d Cir. 2010), in support of his argument.[15]   However, *Basciano* is distinguishable from the instant action because in that case, the Second Circuit addressed the issue of bringing multiple RICO charges against the same defendant based on the same enterprise. *See id*. at 188-89 (indicating that the defendant was indicted for one count of substantive racketeering, and three counts of conspiracy to murder in the aid of racketeering, and that the government conceded that the racketeering charges stemmed from the same enterprise but argued that they involved different patterns of racketeering).   In contrast, the instant action does not raise the same concerns as those in *Basciano* because Burwell was charged with one RICO charge related to one enterprise.   Accordingly, the Court is not persuaded that Burwell's counsel was ineffective by failing to make this additional argument on Burwell's behalf.

Further, to the extent that Burwell may be arguing that the RICO charge (Count I), and the armed robbery of the Industrial Bank on or about June 12, 2004 (Count X) are multiplicitous charges, an argument that does not appear to have been advanced in his pre-trial motion, the

---

[15] The Court notes that the trial in the instant action took place in 2005, and *Basciano* was decided in 2010.

Court finds that this argument also is without merit.[16]   Multiplicitous charges "improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981). "An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Anderson*, 39 F.3d 331, 353-54 (D.C. Cir. 1994), *rev'd en banc*, 59 F.3d 1323 (D.C. Cir. 1995) (en banc).   Under *Blockburger v. United States*, 284 U.S. 299 (1932), the relevant test for determining whether two counts of an indictment are multiplicitous is as follows: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each [count] requires proof of an additional fact which the other does not." *Id.* at 304.   However, "the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history."   *Garrett v. United States*, 471 U.S. 773, 779 (1985).   Indeed, "the *Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of Congress."   *Id.*   Accordingly, it is particularly relevant to the instant action that "Congress intended that a RICO violation be a discrete offense that can be prosecuted separately from its underlying predicate offenses." *United States v. Crosby*, 20 F.3d 480, 484 (D.C. Cir. 1994).

Here, Count I charges racketeering acts that require the Government to establish an "enterprise" and the "continuing" commission of stated offenses such as armed robbery and acts

---

[16] In the instant motion, Burwell asserts: "In this case, the armed bank robbery (Counts III, VII, X, XV) are certainly substantive counts of the Rico allegations and conduct charged in Count 1. Moreover, Count XIX was subsumed in Count One." Def.'s Memo. at 15.  The Court shall only address this claim as it relates to Counts I and X, because Burwell was not charged with or convicted of the other specified counts.

involving murder. In contrast, Count X is a charge for the substantive crime of armed robbery. Given the clear congressional intent to allow RICO violations to be prosecuted separately from underlying offenses, the Court finds that Counts I and X are not multiplicitous in violation of the Double Jeopardy clause. Accordingly, the Court cannot conclude that trial counsel acted in an objectively unreasonable manner by not raising this specific challenge to Burwell's indictment.

Turning to Burwell's argument regarding Count XI, using and carrying a firearm during a crime of violence under 18 U.S.C. § 924(c), Burwell points to case law to support his argument that the charge under this section was improper.  Burwell cites the D.C. Circuit's ruling in *United States v. Anderson*, 59 F.3d 1323 (D.C. Cir. 1995) (en banc), in which the Circuit held that a defendant could not be convicted of multiple counts of using or carrying a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1), if each of the charges was tied to the same predicate offense, in that case a narcotics conspiracy.  *Anderson*, 59 F.3d at 1324-25, 1334.  Burwell also cites to the D.C. Circuit's holding in *United States v. Wilson*, 160 F.3d 732 (D.C. Cir. 1998), that a defendant cannot be convicted of more than one offense under 18 U.S.C. § 924(c), based on one use of one firearm but with two underlying offenses.  *Id.* at 748-50. *Anderson* and *Wilson* are not instructive because those cases deal with the propriety of convicting a defendant of more than one violation of 18 U.S.C. § 924(c), and in the instant action, Burwell was charged with only one count (Count XI), of using and carrying a firearm during a crime of violence under section 924(c).[17]

---

[17] While this does not appear to be the crux of Burwell's argument in the instant motion, the Court notes that in its Memorandum Opinion, it addressed the issue of "whether the different alternatives under 18 U.S.C. § 924(c) -- e.g., use or carry, possess in furtherance of, brandish, or discharge a firearm -- are separate offenses, as the different alternatives carry different

Given that Burwell has pointed to no additional, valid arguments that his counsel should have raised, the Court finds that trial counsel, who moved the Court to dismiss the indictment based on several double jeopardy and multiplicity challenges prior to trial, did not act in an objectively unreasonable manner.   Accordingly, the Court finds that Burwell's ineffective assistance of counsel claims related to the multiplicity and double jeopardy challenges to the indictment are without merit.

### C. *Confrontation Clause Challenge*

Burwell next alleges that his trial and appellate counsel rendered ineffective assistance of counsel by failing to raise a Confrontation Clause challenge to records and affidavits admitted into evidence at trial to establish that the banks that were robbed were Federal Deposit Insurance Corporation ("FDIC") insured, one of the elements of Count II.  Specifically, Burwell objects to the admission of documents establishing the insured status of four banks – Bank of America, Riggs Bank, Chevy Chase Bank, and SunTrust – along with affidavits attesting to the fact that the documents were official records of the FDIC; the records and accompanying affidavits were admitted into evidence at trial without objection.  *See* Ex. CCB-001 (Proof of Insured Status for Chevy Chase Bank), ECF No. [837-1]; RB-001 (Proof of Insured Status for Riggs Bank), ECF

---

punishments." Memo. Op. at 19.  This issue was raised by Burwell's counsel in his motion and, thus, any claim for ineffective assistance of counsel on this issue does not have merit. Ultimately, the Court noted that there may be a duplicity issue with Count XI because the relevant provisions of the charged offense criminalize two separate offenses: (1) *using or carrying* a firearm *during and in relation* to an applicable crime of violence, and (2) *possessing* a firearm *in furtherance* of an applicable crime of violence.  *Id.* at 20.  However, the Court found that the Government could proceed with this charge by employing use of a special verdict form to ensure that the jury considered the different alternatives separately.  *Id.*; *see also* Verdict Form, at 2-3 ("Count Eleven: Using and carrying a firearm during and in relation to a crime of violence on or about June 12, 2004.").

No. [837-2]; BOA-001 (Proof of Insured Status for Bank of America), ECF No. [837-3]; SUN-001 (Proof of Insured Status for SunTrust Bank), ECF No. [837-4]. The Court finds that this claim is without merit for the several reasons described below.

First, Burwell's claim fails because the official records and accompanying affidavits were not testimonial and, thus, do not invoke Confrontation Clause challenges. As the Government properly points out, the records themselves were admitted into evidence under the public records exception to the hearsay rule. *See* Fed. R. Evid. 803(8) (Hearsay Exception for Public Records). Further, the affidavits were admitted pursuant to Federal Rule of Evidence 902(4), to establish that the evidence was self-authenticating as certified copies of public records.

Burwell relies on the Supreme Court's holding in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), in support of his Confrontation Clause argument. In *Melendez-Diaz*, the Supreme Court held that affidavits showing the results of forensic analyses performed on seized substances are testimonial statements and, accordingly, analysts are witnesses under the Confrontation Clause of the Sixth Amendment. *Id.* at 309-11. The Court clarified that affidavits "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" *id.* at 311 (quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004)), are testimonial statements and, accordingly, the authors of such affidavits are witnesses for the purposes of the Confrontation Clause of the Sixth Amendment. *Id.* at 311. The Court found that "[a]bsent a showing that the [authors of the affidavits] were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the [authors of the affidavits] at trial.'" *Id.* In drawing a connection between the affidavits at issue in *Melendez-Diaz*, and the

21

affidavits certifying the FDIC records in this instant action, Burwell argues that his trial counsel erred by failing to raise a Confrontation Clause challenge to the admissibility of the affidavits reflecting that the banks were insured by the FDIC because the authors of the affidavits did not testify at trial. The Court finds that this argument fails based on the relevant case law on this issue.

Indeed, the Supreme Court in *Melendez-Diaz*, appeared to distinguish between situations in which an affidavit is used to authenticate an otherwise admissible record from an affidavit created for the sole purpose of providing evidence against a defendant. *See Melendez-Diaz*, 557 U.S. at 322-23. This Court itself has held that an affidavit certifying the authenticity of a record is not testimonial and, accordingly, not subject to the Confrontation Clause. As this Court held, "[i]t is the records, *not* the certification, that are introduced into substantive evidence against the defendant during trial. The certifications at issue are simply 'too far removed from the 'the principal evil at which the *Confrontation Clause* was directed' to be considered testimonial.'" *United States v. Edwards*, Crim. Case No. 11-129-1, 1, 11 (CKK), 2012 WL 5522157, at *2 (D.D.C. Nov. 15, 2012) (quoting *United States v. Ellis*, 460 F.3d 920, 920 (7th Cir. 2006)). The Court finds the affidavits were not testimonial within the meaning of the Confrontation Clause because the affidavits in question were created only to certify the authenticity of the public records, and not to provide substantive evidence against Burwell at trial.

Second, Burwell's claim fails because there was independent testimony at trial that each of the four banks were FDIC-insured and Burwell's counsel was presented with the opportunity to cross-examine these witnesses on the issue. Tr. 1216:6-21 (Apr. 18, 2005) (Testimony of Viola J. Scott, banking center manager at Bank of America branch); Tr. 1463:23—1464:10 (Apr.

19, 2005) (testimony of Ricardo Young, assistant manager at Riggs Bank branch); Tr. 1543:5-19

(Apr. 20, 2005) (Testimony of Jacqueline Caldwell, bank manager at Chevy Chase Bank branch

in Hyattsville, MD);   Tr. 1634:15-23 (April 20, 2005) (Testimony of Curtis Oliver, branch

manager at Chevy Chase Bank branch in Silver Hill, MD);  Tr. 2168:11—2169:2 (Apr. 25, 2005)

(Testimony of Charlene Hollings, branch manager of SunTrust Bank branch).  Finally, Burwell's

claim fails because he has not pointed to any evidence that his counsel failed to present that

refuted the assertion that the banks were in fact FDIC-insured, nor does Burwell himself at this

juncture appear to be claiming that the banks were not FDIC-insured.[18]

Given that the evidence in question does not raise Confrontation Clause concerns and that

defense counsel was presented with the opportunity to cross-examine witnesses who testified that

each bank was FDIC-insured, the Court finds that both trial counsel and appellate counsel did not

act in an objectively unreasonable manner by failing to raise this challenge either at trial or on

appeal.  Nor does the Court find that Burwell was prejudiced by counsels' failure to raise this

claim because Burwell has not pointed to any evidence to rebut the claim that the banks were

FDIC-insured.  Accordingly, the Court concludes that Burwell's claim that his counsel rendered

him ineffective assistance of counsel by failing to raise a Confrontation Clause challenge is

without merit.

### D.  *General Performance During Trial*

---

[18] Burwell in his reply also indicates that the Court admitted the certificates "without any
reliability finding or any attemp [sic] to engage in the balancing test required by Rule 32.1."
Def.'s Reply at 7.  Both Federal Rule of Criminal Procedure 32.1 and this Court's LCrR 32.1
address the procedure for revoking or modifying probation or supervised release and,
accordingly, are not relevant to the instant matter under which Burwell currently is serving his
term of imprisonment.

Burwell next alleges that his counsel rendered ineffective assistance by failing to cross-examine witnesses, by failing to employ a "theory of defense," and by generally providing a "poor overall performance" at trial.  The Court finds that Burwell has failed to establish that his trial counsel was deficient in any of these respects and, accordingly, his claims for ineffective assistance of counsel on these bases are without merit.

Burwell does not point to any specific witnesses whom his counsel failed to cross-examine.  He simply explains that his counsel "during trial was ineffective with poor overall performance."  Def.'s Memo. at 22.  Specifically, Burwell argues that his counsel's strategy was to remain silent as much as possible due to Burwell's lesser role and lesser charges as compared to his codefendants.  *Id.*  Burwell further asserts that "[d]uring the trial[,] testimony from government witnesses was inconsistent and counsel still waited for other defense lawyers to object and [did] not applying any theory of defense what so ever."  *Id.* at 23.

Under *Strickland*, in order to establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient, and that the deficient performance prejudiced the defense.  *United States v. Brown*, 398 Fed. App'x 599, 600 (D.C. Cir. 2010).  However, the Court is not required to consider both prongs of the test if it can dispose of the claim on one or the other.  *Id.*  Here, Burwell has failed to meet the first prong because he has not shown that his counsel's performance was deficient.  Burwell's vague claim that his counsel should have cross-examined unnamed government witnesses is insufficient to overcome the strong presumption that his counsel's representation at trial was adequate and reasonable.  *See United States v. Rush*, 910 F. Supp. 2d 286, 293-94 (D.D.C. 2012) (holding that defendant's broad claim that counsel failed to secure and adequately explain the terms of her plea agreement was insufficient to

overcome the presumption that her counsel's representation was reasonable); *Simms v. United States*, 730 F. Supp. 2d 58, 61 (D.D.C. 2010) (holding that "vague and conclusory" allegations that counsel's representation was ineffective are not enough to overcome the strong presumption of effective representation).  Indeed, Burwell has pointed to no specific witnesses that he argues his attorney should have cross-examined, other than generally referring to the testimony of "government witnesses," that spanned over roughly eight weeks.

Burwell's allegation that his counsel employed "no theory of defense" and, thus, was ineffective similarly fails.  While Burwell asserts that his counsel employed no "theory of defense," in the same passage he does indicate that his counsel employed the strategy of minimally speaking at trial to deflect focus away from Burwell and on to his codefendants who allegedly had played a larger role in the conspiracy.  Def.'s Memo. at 22-23.  Indeed, the assertion that Burwell's counsel made a strategic decision to allow codefendants' counsel to speak more frequently in order to draw attention away from Burwell's alleged role does not establish that Burwell's counsel had no theory of the defense.  As the Government points out, Burwell's counsel pursued an alibi defense which is well within the range of professionally reasonable judgments.  Govt.'s Opp'n at 17.  Given the nature of the charges against Burwell as compared to those of his codefendants and the nature of the evidence, Burwell has not demonstrated that his trial counsel's performance was in any way deficient based on his alleged failure to employ a theory of the defense.  *See Strickland*, 466 U.S. at 681 ("[S]trategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based.").  Similarly, Burwell's general allegation that his defense counsel waited for codefendants' counsel to object does not

establish either that Burwell's counsel's performance was deficient or that such a deficiency prejudiced Burwell, given that objections were made by other counsel and Burwell has pointed to no specific objection that should have been raised but was not.[19]   Finally, Burwell's bare allegation that his counsel was ineffective by giving a "poor overall performance" is simply not enough to overcome the presumption that his counsel's representation was reasonable.  *See* Def.'s Memo. at 22.

Burwell has made no specific arguments to support the contention that his trial counsel's performance was deficient by failing to cross-examine unspecified witnesses, employing "no theory of defense," or generally providing what Burwell deemed a "poor overall performance" at trial with no specific information.   Accordingly, Burwell's ineffective assistance of counsel claims on these bases fail.

### E.  *Burwell's Right to Testify at Trial*

Burwell raises the claim that his counsel was ineffective by failing to allow him to testify on his own behalf despite Burwell "plead[ing] with counsel" to be able to do so.  Def.'s Memo.

---

[19] Indeed, the Court in its Order Setting Forth Trial Procedures in Criminal Cases specifically explained:

> From and after the moment the case is called for trial, any objection, motion or other application for relief made by any defense counsel orally or in writing shall be deemed to be adopted and joined in by every other defendant, respectively, without announcement by counsel to that effect, and the rulings of the Court shall be deemed applicable to each defendant unless otherwise stated at the time the ruling is made. Accordingly, it shall be regarded as unnecessary and improper for counsel to rise to "join in" an objection or motion. Rather, counsel should rise to be heard **only** for the purpose of expressly opting out of an objection or motion if that is their position.

Order Setting Forth Trial Proc. in Crim. Cases (Feb. 23, 2005) at 7, ECF No. [202].

at 22.  The D.C. Circuit explained that ineffective assistance of counsel claims premised on the argument that a defendant was denied his right to testify on his own behalf should be analyzed in a manner consistent with the two-part *Strickland* test.  *United States v. Tavares*, 100 F.3d 995, 998 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1160 (1997).  The Court must "continue to assign special significance to the defendant's precluded right to testify and at the same time to inquire whether it is reasonably probable that the defendant's testimony would have changed the outcome of the trial in his favor."  *Id.*  Indeed, a defendant's testimony would have no impact or a negative impact at trial in some cases.  *Id.*

The Court first notes that in the instant action, Burwell was placed under oath on June 13, 2005, and Burwell, after being fully advised of his right to testify by the Court, indicated that he was undecided on the issue of whether or not to testify.  Tr. 6909:12—6911:24 (Jun. 13, 2005). On June 16, 2005, the Court again asked Burwell if he had made a decision regarding his right to testify, Tr. 7472:1-4 (Jun. 16, 2005), and Burwell indicated on the record, "I have made my decision and I don't want to testify," *id.* at 7472:5-6.  Further, Burwell has offered absolutely no evidence as to what testimony he would have presented at trial that would have changed the outcome.  *See Tavares*, 100 F.3d at 998 (considering an affidavit submitted by the defendant describing what testimony he would have provided at trial).  The Court finds that Burwell's claim for ineffective assistance of counsel must fail because Burwell has failed to establish that he was prejudiced in any way by his failure to testify.  *See Wilson v. United States*, Crim. No. 96-319-01 (CKK), 2005 WL 6293747, *9-*10 (D.D.C. Sept. 12, 2005) (finding that a defendant must establish that his testimony would have sufficiently supported his alibi defense so as to create a reasonable probability that the result of the trial would have been different); *Townsend v.*

*United States*, Crim. No. 88-254-03 (TFH), 2000 WL 35761242, at *5 (D.D.C. Aug. 28, 2000) (denying defendant's ineffective assistance of counsel claim premised on the allegation that he was told by his defense attorney that he could not testify due to his criminal record when defendant did not allege that his testimony would have altered the outcome of the trial or that he had information that was substantially useful to his defense). The Court cannot conclude that Burwell was prejudiced in any way by his failure to testify at trial and, accordingly, the Court finds that his ineffective assistance of counsel claim related to this issue fails. Moreover, Burwell made the decision during trial not to testify.

### F.  *Government Misconduct*

Burwell next argues that his trial counsel was ineffective by failing to challenge government misconduct at trial or on appeal. Def.'s Memo. at 24, 28. Generally, Burwell asserts that from a review of the trial transcripts, "it is clear that the government vouched for its witnesses and made several prejudicial remarks to the jury during closing." *Id.* at 24.  Burwell also alleges that two coconspirators turned government witnesses both testified that they were not expecting and had not been promised any benefit for testifying at trial. *Id.*  The Court shall address each claim in turn.

First, the vague assertion regarding the government's closing argument is insufficient to establish that Burwell's counsel's performance fell below an objective standard of reasonableness.  Indeed, Burwell cannot overcome the strong presumption that his counsel acted reasonably by simply lodging a vague objection that the government vouched for unidentified witnesses and made prejudicial remarks during closing without citing a single example of objectionable conduct. *See United States v. Moore*, 651 F.3d 30, 85 (D.C. Cir. 2011) (Defendant

must raise a "'colorable claim' by making 'factual allegations that, if true, would establish a violation of his sixth amendment right to counsel.'"); *United States v. Rush*, 910 F. Supp. 2d 286, 293-94 (D.D.C. 2012) (requiring more than a broad claim that counsel failed to secure and adequately explain the terms of a plea agreement to overcome the presumption that defense counsel's representation was reasonable). Accordingly, the Court finds that Burwell's claim that his trial and appellate counsel were ineffective by failing to challenge unspecified incidents of prosecutorial misconduct is without merit.

Second, Burwell asserts that government witnesses Noureddine Chtaini and Antwon Perry both testified that they were not expecting nor had been promised any benefit for testifying. Def.'s Memo. at 24. Burwell's assertion that both Chtaini and Perry testified that they had not been promised anything in exchange for their testimony is incorrect. Specifically, Chtaini indicated that he had pled guilty to multiple charges, Tr. 3102:16—3104:4 (May 3, 2005), and, if he complied with the terms of his agreement including testifying truthfully and cooperating with the Government, that the Government would submit a 5K letter requesting a sentence that departed from the Guideline range, *id.* at 3104:25—3105:15. Chtaini also indicated that he had not yet been sentenced, but that he would sentenced by this Court and that no one had indicated to him what sentence this Court would impose. *Id.* at 3105:16-24. Similarly, Perry indicated that he had entered a guilty plea, that he discussed the sentencing guidelines with his attorney, that he was cooperating in hopes of getting a lesser sentence, and that although he would be sentenced by this Court, he had not yet been sentenced. Tr. 5486:1—5488:6 (Jun. 1, 2005).

Accordingly, Burwell cannot establish that either his trial or appellate counsel was

ineffective for failing to object to, or raise on appeal, this issue, because it is clear from the record that neither witnesses testified that he was not expecting any benefit in exchange for testifying.

### G. *Defendant's Closing Argument*

Burwell next argues that his counsel was ineffective by failing to use the allotted time for closing argument in an efficient manner. Def.'s Memo. at 23. Specifically, Burwell asserts that his counsel used an ineffective strategy by choosing to use half of the 30-40 minutes to deliver an anecdote. *Id.* "[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). Accordingly, "[j]udicial review of a defense attorney's summation is . . . highly deferential." *Id.* at 6. In order to show that his counsel's closing argument was ineffective as to violate the Sixth Amendment, Burwell must meet the *Strickland* test by showing that (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Smith v. Spisak*, 558 U.S. 139, 149 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). Here, Burwell's claim fails because neither prong of the test is met based on the record.

First, Burwell's counsel's use of an anecdote during closing was not objectively unreasonable. *See* Tr. 7881:7—7883:23 (Jun. 20, 2005). In his closing argument, Burwell's counsel first reminded the jury that the burden of proof rested at all times with the Government, and reminded the jury of the charges that specifically were pending against Burwell. *Id.* at

7872:1—7873:4.   Burwell's counsel then spent a large amount of time attacking the government's evidence against Burwell, and emphasizing evidence that demonstrated Burwell's innocence.   *Id.* at 7873:5—7881:6.   Finally, Burwell's counsel chose to employ an anecdote about defense counsel and his brother eating a pie and then blaming it on a cat to avoid being punished by their mother to close the argument.[20]   *Id.* at 7881:7—7883:23.   Given the strong presumption that his counsel's conduct was within the wide range of reasonable professional assistance, the Court finds that the use of this anecdote during his closing was not objectively unreasonable such that Burwell's counsel's closing argument was deficient.   *See Strickland*, 466 U.S. at 689.   Indeed, Burwell's counsel spent the majority of his allotted time pointing to discrepancies between the testimony of government witnesses and Burwell's witnesses, and discussing the alternative reason why Burwell's DNA was found on one of the vests.   Tr. 7873:5—7881:6 (Jun. 20, 2005).   The fact that at the end of closing, Burwell's counsel chose to use an anecdote illustrating Burwell's defense theory in support of his argument is simply not enough to demonstrate that he provided objectively unreasonable representation.   Further, even assuming *arguendo*, that defense counsel's closing was deficient, Burwell does not point to any evidence that his counsel should have, but failed to point to during his closing argument, nor does Burwell even point to any general argument that he claims would have been more effective. Accordingly, the Court concludes that Burwell's ineffective assistance of counsel claim as it relates to the closing argument fails.

---

[20] While Burwell alleges that his counsel spent half of the allotted time for closing delivering the anecdote, the Court notes that the Burwell's closing spanned 12 pages in the transcript, Tr. 7872:1—7883:20 (Jun. 20, 2005), and the anecdote was delivered over the last two and a half pages, *id.* at 7881:7—7883:20.

## H.  *Informant Jury Instruction*

Burwell next argues that his trial counsel rendered him ineffective assistance of counsel by failing to request an "informant jury instruction."  Specifically, Burwell asserts "the jury need[ed] to be instructed to scrutinize the informant testimony more carefully than other witnesses, even biased witnesses, because of the potential for perjury born out of self-interest." Def.'s Memo. at 20.  Burwell points to the testimony of two codefendants turned government witnesses in relation to this claim.  *Id.*

Burwell's claim fails because the record reflects that the Court did, in fact, give instructions regarding witnesses with plea agreements and witnesses who are accomplices.  The instructions as read during trial follow:

> Now, you've heard evidence that Noureddine Chtaini, Omar Holmes and Antwon Perry each entered into separate plea agreements with the government, pursuant to which each of these witnesses agreed to testify truthfully in this case, and the government agreed to dismiss charges against him and/or decline prosecution of charges against him, and bring the witness's cooperation to the attention of the sentencing court on the remaining charges.

> The government is permitted to enter into this kind of plea agreement. You in turn may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond reasonable doubt.

> A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness, because the plea agreement does not protect him against prosecution for perjury or false statement, should he lie under oath.

> However, you may consider whether a witness who has entered into such an agreement has an interest different from any other witness. A witness who realizes that he may be able to obtain his own freedom or receive a lighter sentence by giving testimony may have a motive to lie.

> The testimony of a witness who has entered into a plea agreement should be received with caution and scrutinized with care. You should give the testimony

such weight as in your judgment it's fairly entitled to receive.

Now, you've also heard that Omar Holmes and Noureddine Chtaini were accomplices. Accomplices in the commission of a crime are competent witnesses, and the government has the right to use them as witnesses. An accomplice is anyone who knowingly and voluntarily cooperates with, aids, assists, advises or encourages another person in the commission of a crime, regardless of his degree of participation.

The testimony of an alleged accomplice should be received with caution and scrutinized with care.  You should give it such weight as in your judgment it's fairly entitled to receive. If the testimony of an alleged accomplice is not supported by other evidence, you may convict the defendant upon that testimony only if you believe that it proves the guilt of the defendant beyond a reasonable doubt.

Tr.  7996:1–7997:16 (Jun. 21, 2005).

Accordingly, Burwell's ineffective assistance of counsel claims fail on this issue because the Court did give the relevant instruction.

## I.  *Theory of Defense Instruction*

Next, Burwell argues that his trial counsel rendered him ineffective assistance of counsel by failing to request a theory-of-defense jury instruction.  Def.'s Memo. at 23-24.  "A theory-of-defense instruction is in order if there is 'sufficient evidence from which a reasonable jury could find' for the defendant on his theory." *United States v. Hurt*, 527 F.3d 1347, 1351 (D.C. Cir. 2008).  In assessing Burwell's claim, the Court again employs the *Strickland* test for ineffective assistance of counsel.  *See id.* at 1356.

As an initial matter, Burwell's claim fails because he does not point to any specific theory-of-defense instruction to which he believes that he was entitled.  Rather, he simply states that his counsel should have requested such an instruction without any specificity.  Furthermore, the Court gleans from the record and the instant motion that Burwell's defense consistently has

been that he was not present at the specific bank robbery to which he was charged as corroborated by an alibi, and that his DNA was present on one of the vests because he had previously owned it.   Indeed, the Court is unable to identify any other defense advanced by Burwell.  Here, while Burwell's counsel did not request a specific theory-of-defense instruction, *see* Tr. 8050:1—8051:1 (Jun. 21, 2005), the Court did give a particularized alibi instruction in which Burwell was identified:

> Now this is the instruction on alibi. Evidence has been introduced that defendant Bryan Burwell was not present on June 12, 2004, and defendant Marvin Palmer was not present at the time when and the place where the offense was allegedly committed.
>
> The defendant may not be convicted of the offense with which he is charged unless the government proves beyond a reasonable doubt that the defendant was present at the time when and the place where the offense allegedly was committed. If, after a full and fair consideration of all the facts and circumstances in evidence, you find that the government has failed to prove beyond a reasonable doubt that the defendant was present at the time when and the place where the offense charged was allegedly committed, you must find the defendant not guilty.

*Id.* at 8049:12-25.

Given that the jury instruction regarding alibis related to Burwell, the Court cannot find that defense counsel's failure to also request another theory-of-defense instruction fell below an objectively unreasonable standard in light of professional norms.   Nor can the Court conclude that the outcome would have been different if trial counsel had requested a theory-of-defense instruction given that the instructions as a whole convey the substance of Burwell's defense in light of the alibi instruction.   *Cf. Hurt*, 527 F.3d at 1351 (holding that a trial court's mistaken refusal of a requested jury instruction is not a reversible error if the instructions as a whole adequately convey the substance of the requested instruction).   Accordingly, the Court finds that

Burwell's claim that his trial counsel rendered him ineffective assistance of counsel by failing to request a theory-of-defense instruction is without merit.

### J.  *Request for Polling of the Jury*

Burwell asserts that he was rendered ineffective assistance of counsel because his trial counsel failed to request a polling of the jury after the verdict.  Burwell argues that his counsel should have made this request due to "ambiguous markings on the verdict form," the potentially confusing wording of the jury form, and the emotion of the foreperson when reading the verdict.[21]  Def.'s Memo. at 26-27.  Burwell's claim fails because the trial transcript reflects that Mr. Martin did request that the jury be polled, Tr. 8303:10-11 (July 15, 2005), and it is equally clear that the jury was in fact polled as a result of that request, *id.* at 8303:12—8306:18.  Accordingly, Burwell's claim for ineffective assistance of counsel on the basis that his counsel failed to request polling of the jury fails.

### K.  *Juror Misconduct and Bias*

Next, Burwell argues that his trial counsel failed to effectively represent him when

---

[21] With regard to Burwell's argument about the potential confusion with the Verdict Form, it is unclear what Verdict Form he is discussing.  *See* Verdict Form, ECF No. [474]. Burwell alleges that each juror marked "BOTH" as an option for whether it was proven or not proven that he used a fully-automatic weapon during the act of committing the robbery.  Def.'s Memo. at 27.  However, it is clear from the verdict form that the jury checked that it was proven that "[t]he firearm was a semiautomatic assault weapon" and that "[t]he firearm was a machinegun," but there is no option for "BOTH" as Burwell indicates.  Verdict Form, at 3. While it is unclear to the Court if Burwell is arguing that the jury could not have found that it was proven that the firearm in question was a semiautomatic assault weapon and a machinegun as the verdict form reflects, the Court notes that Burwell was charged under Count XI for using and carrying a firearm *or* aiding and abetting the use and carrying of a firearm.  *See* Superseding Indictment (Feb. 15, 2005), at 24, ECF No. [175]. Accordingly, Burwell could be found culpable for the firearm that he personally carried during a crime of violence, or that his coconspirators carried.  *See* 18 U.S.C. § 2.

allegations of juror misconduct and bias arose, and that his appellate counsel failed to raise the issue on appeal.  Def.'s Memo. at 25-26, 28.  Allegations of juror misconduct were raised in two post-trial motions by trial counsel.  On August 15, 2005, codefendant Miguel Morrow filed a Motion for a New Trial which the Court considered on behalf of Burwell as well as the other codefendants.[22]  Morrow's Mot. for New Trial, ECF No. [488]; *United States v. Morrow*, 412 F. Supp. 2d 146, 152 n.4 (D.D.C. 2006).  Defendants alleged that: jurors went to both the scenes of the bank robberies and another relevant location, and described the areas during deliberations; jurors read and were influenced by a *Washington Post* article that had been admitted into evidence after it was found at a codefendant's apartment; and at least one juror remained in contact with a juror who had been dismissed from the jury after making improper comments about the defendants' guilt during the trial.  Morrow's Mot. for New Trial at 6-7; Def.'s Supp. Memo. in Supp. of Mot. For New Trial at 2-3, ECF No. [509].  After becoming concerned about the "relative unspecific and generalized assertions of juror misconduct by Defendants," the Court set the matter for an evidentiary hearing on the issue of the alleged jury misconduct.  *Morrow*, 412 F. Supp. 2d at 152.  Prior to the hearing, the Court directed that the Defendants provide the Government and the Court with any statement made by a juror-witness expected to appear at the evidentiary hearing, and information identifying the individual or individuals to whom the juror made such statements.  *Id.*  Defendants produced post-trial emails between counsel and one juror, Juror #1.  *Id.*

---

[22] Burwell in his reply indicated that his trial counsel was deficient by failing to file a motion for a new trial on the basis of juror misconduct and bias. Def.'s Reply at 8. This argument is without merit as the Court considered codefendant Morrow's motion on Burwell's behalf and, accordingly, Burwell cannot establish that he was prejudiced by his trial counsel's failure to file a separate motion for a new trial.

The Court held an evidentiary hearing on the issue of juror misconduct on October 31, 2005 and Juror #1, who was the only juror who provided information relied upon by Defendants, testified under oath.  Min. Entry (Oct. 31, 2005); *Morrow*, 412 F. Supp. 2d at 152.  However, in keeping within the confines of Federal Rule of Evidence 606(b),[23] which governs inquiries into the validity of a verdict in which a juror is called as a witness, the Court conducted the initial inquiry and then allowed each defendant the opportunity to ask further questions.  *Morrow*, 412 F. Supp. 2d at 152-53.  After hearing the evidence and reviewing additional briefing filed after the hearing, the Court entered a 44-page Memorandum Opinion specifically considering and rejecting each of the claims of juror misconduct as a basis for granting a new trial.  *See generally id.* at 167-74.  Further, the Court found that the likelihood of prejudice was too insignificant to warrant a more invasive hearing involving more members of the jury.  *Id.* at 167.  Accordingly, the Court denied the Defendants' requests for further hearings and for a new trial.  *Id.* at 174.

On April 7, 2006, Morrow filed a second motion for a new trial, alleging juror misconduct on the basis that Juror #2, the foreperson of the jury, lied or omitted facts during *voir*

---

[23] At the relevant time, Federal Rule of Evidence 606(b) proscribed:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed. R. Evid. 606(b) (2005) (amended 2011).

*dire* regarding her relationship with Jerrold E. Vincent, a person unrelated to this case who allegedly had been charged with and convicted of assault. *See* Morrow's Mot. to Reopen Def. Morrow's Mot. for New Trial, Or, In the Alt., Mot. for New Trial on Newly Discovered Evid., ECF No. [596]. Burwell joined in Morrow's second motion for a new trial. *United States v. Morrow*, Crim. No. 04-355 (CKK), 2006 WL 1147615, at *1 n.1 (D.D.C. Apr. 26, 2006). The Court did not hold a hearing on the issue, and instead based its ruling on a searching examination of the Defendants' second motion, the Government's opposition, the replies filed by numerous Defendants, the attached exhibits, the relevant case law, and the entire record.[24] *Id.* at *1. On April 26, 2006, the Court issued a 35-page Memorandum Opinion detailing its reasons for denying the Defendants' second motion for a new trial. *See generally id.* The Court first found that the Defendants' second motion for a new trial was untimely. Additionally, the Court held that "Defendants [] simply made no showing of bias resulting from Mr. Vincent's situation that could have transferred to them which would be sufficient to support a strike for cause of Juror # 2 had that information been disclosed." *Id.* at *19.

Burwell's arguments in the instant motion appear to center around the first motion for a new trial, involving the claims made by Juror #1. *See* Def.'s Memo. at 25-26 (only mentioning the juror misconduct claims raised by Juror #1 and not those surrounding Juror #2). Burwell raises two specific objections to his counsel's performance at the October 31, 2005 hearing: (1) Defense counsel should have subpoenaed the other jurors who were identified by Juror #1 as the possible sources of misconduct; and (2) Defense counsel should have taken the stand to "present

---

[24] The Court notes that at the time of the filing of the Defendants' second motion for a new trial, Juror #2 was deceased. *Morrow*, 2006 WL 1147615, at *3.

evidence regarding his personal knowledge of the alleged misconduct garnered while talking to Juror NO.1, and/or any other jurors involved."  Def.'s Memo. at 26.  The Court shall address each challenge in turn.

Turning first to Burwell's charge that his counsel should have subpoenaed the other jurors to testify at the October 31, 2005 hearing, the Court notes that it limited the presentation of evidence at that hearing.  The Court held a hearing on the issue of the alleged juror misconduct in light of the vague allegations of juror misconduct made in the Defendants' motion.  As the Court set forth in a written Order prior to the hearing:

> The purpose of the evidentiary hearing was to put on the record in detail the allegations of juror misconduct made by an unidentified 'juror' set forth in Defendant Morrow's Motion for a New Trial, allow for cross-examination by the Government to investigate the claims made, and provide the opportunity to take further action vis-á-vis other jurors if necessary.

Order (Oct. 27, 2005), at 1, ECF No. [528].  The Court, citing its great discretion in the investigation of alleged juror misconduct, set the parameters of the hearing:

> Given that the basic goal of a post-trial evidentiary hearing relating to allegations of juror misconduct is to uncover potential prejudice to Defendants, the parameters of Federal Rule of Criminal Procedure 26.2 are largely inapplicable. The October 31, 2005 hearing will not be a typical trial matter where the parties' strategies in the presentation of witnesses may be relevant or important, and the parties' presentations and questioning are not designed to influence the fact-finder regarding the relative guilt or innocence of the Defendants. Rather, the Court is conducting its own post-trial proceeding and is calling this juror in order to determine (1) if any juror misconduct occurred, (2) the scope of the misconduct, and (3) whether any substantive rights were infringed.

*Id.* at 2-3.  Accordingly, it was the Court, and not defense counsel, that made the decision to hear from only Juror #1, the sole juror raising allegations of juror misconduct, during this hearing. Indeed, the purpose of the hearing was to place the allegations on the record so that the Court

could make a decision as to whether a further hearing involving other jurors was necessary. After hearing the testimony of Juror #1, the Court determined that a further hearing was not necessary and expressly denied the Defendants' request to conduct a further hearing to take testimony from other jurors. *See Morrow*, 412 F. Supp. 2d at 167 ("Upon a review of the record adduced at the October 31, 2005 hearing, the Court—in employing its discretion—finds that a more invasive hearing involving other members of the jury is unnecessary and not in the interests of justice."). Given that it was the Court's and not defense counsel's decision to only take testimony from Juror #1 at the evidentiary hearing, this is an improper basis for an ineffective assistance of counsel claim. Further, it is clear from the record that the defense counsel unsuccessfully attempted to persuade the Court to take testimony from the other jurors, a request that the Court denied as part of its lengthy written opinion. *See Morrow*, 412 F. Supp. 2d at 174. Accordingly, Burwell's claim that his counsel was ineffective for failing to subpoena other jurors is without merit because such subpoenas would have been fruitless given that the Court indicated that it would only hear testimony from Juror #1 at that hearing.

Burwell's second claim that his counsel should have testified fails for similar reasons.[25] First, as previously discussed, it is apparent from the record that the Court only permitted testimony directly from Juror #1 at the hearing in question. Second, it is unclear whether Burwell's counsel ever even had direct contact with any of the jurors about the alleged misconduct as it appears Juror #1 reached out to and met with counsel for two of the codefendants, one of whom filed the original motion for a new trial as a result. *See id.* at 153

---

[25] The Court notes that Burwell at times uses feminine pronouns to refer to his counsel in this section, however, Burwell's trial counsel was male. *See* Def.'s Memo. at 26.

n.5.  Third, any testimony by Burwell's counsel regarding conversations he had with jurors about

potential misconduct raises a host of evidentiary issues.  *See, e.g.,* Fed. R. Evid. 802 & 805 (rules

against hearsay and hearsay within hearsay); *Id.* 602 (requirement that a witness may only testify

as to matters to which he or she has personal knowledge).  Fourth, allowing Burwell's counsel to

testify on Burwell's behalf also raises ethical concerns.  *See* Model Rules of Prof'l Conduct R.

3.7 & cmt. n.1 ("Combining the roles of advocate and witness can prejudice the tribunal and the

opposing party and can also involve a conflict of interest between the lawyer and client."); D.C.

Rules of Prof'l Conduct R. 3.7.  For all these reasons, the Court concludes that trial counsel's

performance related to the juror misconduct issues that arose after trial was objectively

reasonable in light of professional norms.

Burwell also asserts that his appellate counsel rendered ineffective assistance of counsel

by failing to argue during the appeal that he was entitled to a new trial based on the alleged juror

misconduct.  Def.'s Memo. at 28.  Burwell's claim as to his appellate counsel also fails for the

reasons described herein.  The *Strickland* standard applies to claims of ineffective assistance of

both trial and appellate counsel.  *Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014).

Accordingly, in order to prevail, Burwell must demonstrate: "(1) his counsel's performance 'fell

below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)).  As the Supreme

Court has noted, "appellate counsel who files a merits brief need not (and should not) raise every

nonfrivolous claim, but rather may select from among them in order to maximize the likelihood

of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  However, the Court noted

that "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent." *Id.*

In the instant action, Burwell's appellate counsel chose not to raise the issue of the alleged jury misconduct in favor of raising other claims on Burwell's behalf.  Notably, Burwell's appellate counsel raised the issue of whether Burwell could be convicted of Count XI, under which he was sentenced to 360 months imprisonment, if the Government did not prove that Burwell knew that the weapon he was carrying while committing a crime of violence was capable of firing automatically.  *United States v. Burwell*, 690 F.3d 500, 502 (D.C. Cir. 2012); Judgment in a Criminal Case, ECF No. [615]. Ultimately, the D.C. Circuit reheard the issue *en banc*.  *See generally Burwell*, 690 F.3d 500.

Here, the Court cannot conclude that appellate counsel's decision not to raise the issue of the alleged juror misconduct was objectively unreasonable given professional norms, nor can the Court conclude that if appellate counsel had raised this issue, that there is a reasonable probability of a different result on appeal.  First, the D.C. Circuit has recognized for claims of juror misconduct, "[t]he trial court obviously is the tribunal best qualified to weigh the relevant factors and draw the conclusion appropriate."  *United States v. Williams*, 822 F.2d 1174, 1189 (D.C. Cir. 1987).  Second, as the Government points out, the D.C. Circuit utilizes a "highly deferential" standard of review for a district court's denial of a motion for a new trial.  Govt.'s Opp'n at 22 (citing *United States v. Rouse*, 168 F.3d 1371, 1376 (D.C. Cir. 1999); *see also United States v. Gloster*, 185 F.3d 910, 914 (D.C. Cir. 1999) ("We will reverse a district court's decision whether to grant such a motion [for a new trial] 'only if the court abused its discretion or misapplied the law.'").  Finally, the Court finds that there is not a reasonable probability of a

different result on appeal had the issue of juror misconduct been raised.  As this Court noted,

"Quite simply, the circumstances adduced by Defendants do not approach those other, far more

egregious cases where the D.C. Circuit has previously found that no 'prejudice' occurred and no

new trial was warranted despite third-party contacts with the jury."  *Morrow*, 412 F. Supp. 2d at

174.  Given the standard of review, the Court concludes that appellate counsel's failure to raise

the alleged juror misconduct on appeal in favor of stronger claims such as the issue of statutory

interpretation that the D.C. Circuit reheard *en banc* and that may have resulted in a reduction of

Burwell's sentence by as much as 30 years, was objectively reasonable.  *See Jones v. Barnes*,

463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have

emphasized the importance of winnowing out weaker arguments on appeal and focusing on one

central issue if possible, or at most on a few key issues.").  Accordingly, the Court finds that

Burwell is not entitled to relief on his ineffective assistance of counsel claims related to the

alleged juror misconduct.

### L.  *Failure to Interview Witnesses*

Next, Burwell argues that his trial counsel rendered ineffective assistance of counsel by

failing to interview a key witness and failing to properly interview an alibi witness prior to trial.

Def.'s Memo. at 18.  Specifically, Burwell asserts:

> Counsel was supposed to have sent out investigator to alibi witness's house on
> "one" occasion despite Petitioner's plea that this witness was key to connection of
> DNA on one of the flash jackets found at one of the alleged stash houses.
> Counsel actually apologized for his negligence in the matter saying he "thought"
> the investigator was on top of the situation and that he interviewed each alibi
> witness properly.  Counsel also stated that he has "messed up" and the issue
> would become an appeal issue due to the outcome of the case.  The second alibi
> witness was not interviewed properly either her testimony was not credible at all
> and was hurtful to defense having called a non-interviewed witnesses and almost

being impeached in front of the jury.

*Id.*  The Government's opposition is of little assistance on this issue as the Government simply conflates this claim along with other claims under the catchall "Strategy and Performance," and does not address it directly.  Govt.'s Opp'n at 15-17.  Instead, the Government proceeds to examine the defense's closing argument and the evidence that was presented, while Burwell complains about evidence that was not presented.  Govt.'s Opp'n at 15.

The *Strickland* test applies to the issue of counsel's alleged failure to interview witnesses prior to trial.  First, Burwell must establish that his counsel's alleged errors did not meet the objective standard of reasonableness under professional norms.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "Where the case involves a failure to investigate, the 'particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"  *United States v. McDade*, 699 F.3d 499, 506 (D.C. Cir. 2012) (quoting *Strickland*, 466 at 691).  If Burwell establishes deficiency in his counsel's performance, he also must establish that it is reasonably likely that the decision reached would have been different absent the errors.  *Id.*

Here, the Court does not have enough information to determine whether either prong of the *Strickland* test is met.  The Court notes that in compliance with the Rules Governing Section 2255 Proceedings 2(b)(5), Burwell declared and stated under penalty of perjury that his motion was true and correct.  Def.'s Mot. at 13.  Accordingly, the Court shall consider the motion and accompanying memorandum in support thereof to be affidavits.  18 U.S.C. § 1746; *see also Weddington v. Zatecky*, 721 F.3d 456, 464-65 (7th Cir. 2013) (treating a federal habeas petition as an affidavit because it was declared and stated under penalty of perjury); *Cf. Wehausen v.*

*United States*, 820 F. Supp. 2d 128, 130 (D.D.C. 2011) (considering a declaration submitted by defense counsel uncontroverted by a defendant who did not sign his § 2255 motion under penalty of perjury and did not file a reply).

Burwell raised concerns about trial counsel's assistance with relation to two witnesses. First, Burwell asserts that his counsel failed to investigate a witness who had information about the DNA evidence belonging to Burwell found on one of the flash jackets, however, Burwell does not identify this witness by name. The Court notes that one of Burwell's witnesses at trial, Reon Holloway, testified that Burwell gave him a camouflage vest (identified as Exhibit "Brinkley 26") in fall 2002 or spring 2003 and that Holloway sold the vest to Noureddine Chtaini around Christmas of 2003. Tr. 7462:21—7468:6 (Jun. 16, 2005). Burwell appears to assert that there is another witness who did not testify at trial but had information about one of the flash jackets admitted into evidence at trial. Second, Burwell argues that his trial counsel failed to properly interview another one of his witnesses who testified at trial. After a review of the record, it appears to the Court that Burwell is referring to Brenda Ramirez, a coworker of Burwell's wife who testified that she had spoken with Burwell on the phone on June 12, 2004, around the time of the robbery of the Industrial Bank. *See* Tr. 6805:21—6809:1 (Jun. 13, 2004).

Given that Burwell has not identified either witness by name and in an exercise of its discretion and pursuant to Rules Governing Section 2255 Proceedings 7(b), the Court shall require additional evidence to be submitted on the issue of counsel's failure to interview these two witnesses. Specifically, the Court shall require that Burwell file a sworn statement with the Court: (1) identifying the witness by name who was "key to connection of DNA on one of the flash jackets found at one of the alleged stash houses," and provide a proffer of what testimony

45

that witness would have provided at trial; and (2) identifying the alibi witness by name (i.e. Brenda Ramirez or a different witness) who testified at trial but whom Burwell asserts was not properly interviewed. Once the Court has received this information from Burwell, the Court shall determine whether the Government will be required to produce a sworn statement from Burwell's trial counsel regarding his alleged failure to interview the witnesses identified by Burwell in his affidavit. Accordingly, the Court shall reserve its ruling on Burwell's request for an evidentiary hearing and on his motion only as to this issue. As previously mentioned, all other claims are denied.

### M. Jury Instructions for Count XI

Burwell raises for the first time in his reply that the Court erred in its jury instructions related to Count XI. Def.'s Reply at 7. Pursuant to Count XI, Burwell was charged with using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) or aiding and abetting that offense in violation of 18 U.S.C. § 2. Superseding Indictment (Feb. 15, 2005), at 24. Burwell asserts that the jury instructions related to aiding and abetting of the offense were erroneous in light of the Supreme Court's holding in *Rosemond v. United States*, -- U.S. --, 134 S. Ct. 1240 (2014).[26] Burwell's claim fails because the Supreme Court's 2014 holding in *Rosemond* does not apply retroactively to the jury instructions given during Burwell's 2005 trial. *Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."). Indeed, there is no indication that the Supreme Court intended for *Rosemond* to apply retroactively, nor has the D.C.

---

[26] While this claim was first raised in the reply, the Court shall address it because *Rosemond* was decided after Burwell filed the instant motion.

Circuit applied *Rosemond* retroactively.   Further, the D.C. Circuit in its opinion indicated: "[B]urwell carried an AK-47 in both of the robberies in which he participated, though there is no evidence that he fired any of the weapons." *United States v. Burwell*, 690 F.3d 500, 502 (D.C. Cir. 2012).   *Rosemond* clarified that a defendant who did not carry a weapon during the commission of an offense can be convicted of aiding and abetting a violation of 18 U.S.C. § 924(c), only if he had advance knowledge that a confederate would use or carry a gun during an in relation to a crime of violence or a drug trafficking crime. *Rosemond,* 134 S. Ct. at 1243. Here, it is clear that Burwell himself carried a weapon during the commission of two of the bank robberies and, thus, his reliance on *Rosemond* is misplaced.   Accordingly, Burwell's claim related to the jury instruction given for Count XI fails.

## N.   *Arguments of Codefendants*

Finally, Burwell seeks to incorporate into his motion the issues raised by his codefendants in their pending § 2255 motions. Def.'s Memo. at 28.   Four of the codefendants with whom Burwell stood trial have § 2255 motions pending before the Court at this time.[27] Burwell urges that he also should receive the benefit of any favorable decision from issues raised by his codefendants. The Court has reviewed the issues raised by Burwell's codefendants in their respective motions and has determined that Burwell's request should be denied because Burwell's claims and his codefendants' claims are premised on alleged ineffective assistance of counsel.   Each codefendant was represented by different counsel and each codefendant was charged with a different combination of offenses.   Accordingly, each claim for ineffective

---

[27] The Court denied the § 2255 motion of Lionel Stoddard, Burwell's other codefendant with whom he stood trial, on November 24, 2014.   U.S. v. Lionel Stoddard, No. 04cr355-02 (CKK), Order (Nov. 24, 2014), ECF No. [838].

assistance of counsel is unique to each codefendant and his own counsel.  To the extent that issues raised by Burwell's codefendants apply to all codefendants, the Court has discussed them.

Burwell in his reply asserts that he adopts codefendant Miguel Morrow's claim that his trial counsel rendered him ineffective assistance of counsel by failing to properly advise him regarding a plea offer that was extended to Burwell prior to trial that he ultimately rejected. Def.'s Reply at 8.  Burwell's claim related to the rejected plea offer fails for several reasons. First, the rejected plea offer claim is raised for the first time in Burwell's reply and, accordingly, the Court need not consider the argument because the Government has not been afforded an opportunity to respond.[28]  *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008). Second, Morrow's claim related to his counsel's assistance during his plea discussions cannot be adopted by Burwell because Morrow asserts that Morrow's trial counsel inaccurately explained to him that he faced a life sentence regardless of whether he accepted the Government's plea offer or he proceeded to trial, and failed to properly explain the sentencing implications of the second section 924(c) violation charged against him if convicted.  U.S. v. Miguel Morrow, No. 04cr355-01 (CKK), Pet.'s Memo. of Law In Support of Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 18 USC § 2255 at 19-23, ECF No. [774-1].  At a bare minimum, here, Burwell cannot adopt Morrow's second claim because Burwell was not charged with two violations of 924(c), nor can the Court conclude that Burwell was rendered ineffective assistance based on an alleged conversation between Morrow and Morrow's trial counsel.

---

[28] The Court notes that Burwell appears to assert that he raised this argument in his original motion by virtue of his attempt to incorporate the arguments raised by all of his codefendants in their respective § 2255 motions.  As the Court discussed *supra*, Burwell is precluded from adopting ineffective assistance of counsel claims raised by his codefendants.

Further, Burwell does not identify either in his original motion or reply any specific discussion that he had or should have had with his trial counsel that establishes that his counsel rendered him ineffective assistance with regard to his plea offer. Finally, the Court notes that it reviewed the transcript from the hearing held on January 31, 2005, during which the Court discussed the pleas offered to Burwell and each of his codefendants on the record.[29]  The terms of the plea offer extended to Burwell were discussed on the record as well as the sentencing exposure for the charges pending against Burwell and Burwell indicated on the record after this discussion that he discussed the plea offer with his attorney, that he did not have questions, and that he did not accept the plea offer.  Tr. 28:22—32:21 (Jan. 31, 2005), ECF No. [728].  Accordingly, Morrow's arguments relating to the discussion that Morrow had with his attorney regarding the plea offer extended to him cannot be adopted by Burwell.  Further, Burwell has not demonstrated that his trial counsel rendered him ineffective assistance of counsel related to the rejected plea offer.

---

[29] As the Court explained:

> [T]he whole purpose of this [hearing] is to make sure on the record that there's been a discussion with each of the clients as to what the plea offer would mean in terms of sentencing guidelines, what the plea offer would mean if they got convicted of all of it, what the difference would be in terms of potential sentences. If you disagree with the way the government has calculated [the potential sentence], you would put that on the record.

> This is so that there – if it doesn't occur, that we go to trial, somebody gets convicted and then afterwards it is raised in a 2255 that they did not get a full discussion of the plea.

> So this is my best way of making sure that everybody is on the same page, that whatever the government has said everybody hears, whatever defense counsel has said and your client, so that there's no issues at a later point.

Tr. 15:3-21 (Jan. 31, 2005), ECF No. [728].

## IV.  CONCLUSION

For the foregoing reasons, the Court finds no reason to set aside Burwell's conviction or sentence at this time.  Accordingly, Burwell's [822] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED IN PART and HELD IN ABEYANCE IN PART. Specifically, the Court shall hold in abeyance its ruling on the ineffective assistance of counsel claim related to counsel's alleged failure to interview witnesses in order to allow for additional briefing on the issue.  Burwell's Motion is denied as to all other claims.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE