**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA, |
| v. |
| BRYAN BURWELL, |
| Defendant. |

**Criminal No. 04cr355-05 (CKK)
(Civil Action No. 14-270)**

**MEMORANDUM OPINION**
(March 12, 2015)

On January 15, 2015, this Court issued an order denying in part and holding in abeyance in part Bryan Burwell's [822] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Specifically, the Court held in abeyance its ruling on Burwell's claim that his trial counsel was ineffective for failing to investigate and interview two witnesses prior to trial. *See* Memo. Op. (Jan. 15, 2015), at 43-46, ECF No. [854]. The Court denied all of Burwell's other claims in his § 2255 motion.[1] *See generally id.* The Court directed Burwell to file a sworn statement with the Court: (1) identifying the witness by name who was "key to connection of DNA on one of the flash jackets found at one of the alleged stash houses," and provide a proffer

---

[1] Pursuant to its January 15, 2015, [853] Order, and accompanying [854] Memorandum Opinion, the Court denied Burwell's claims that his attorneys were ineffective for: (1) failing to challenge the violation of his statutory right to a speedy trial prior to trial; (2) failing to raise double jeopardy and multiplicity challenges to the indictment prior to trial and failing to move to dismiss based on this challenge during trial; (3) failing to raise a Confrontation Clause challenge to certain evidence during trial and on appeal; (4) generally providing a "poor overall performance" at trial; (5) failing to allow Burwell to exercise his right to testify at trial; (6) failing to challenge government misconduct at trial and on appeal; (7) failing to give an effective closing argument at trial; (8) failing to request an informant jury instruction at trial; (9) failing to request a theory-of-defense instruction at trial; (10) failing to request polling of the jury at trial; and (11) failing to properly challenge juror misconduct and bias at trial and on appeal. Memo. Op. (Jan. 15, 2015), at 6-49. Further, the Court denied Burwell's request to vacate, set aside, or correct his sentence on the basis that the jury instructions related to Count XI were erroneous in light of recent Supreme Court precedent. *See id.* at 46-47.

of what testimony that witness would have provided at trial; and (2) identifying the alibi witness by name (i.e. Brenda Ramirez or a different witness) who testified at trial but whom Burwell asserts was not properly interviewed.  Order (Jan. 15, 2015), at 1, ECF No. [853].  Presently before the Court is Burwell's Affidavit in response to that Order which the Court granted leave to file on February 27, 2015.  For the reasons described herein, the Court shall hold in abeyance its ruling on Burwell's ineffective assistance of counsel claim related to witness Reon Holloway and shall require that the government provide an affidavit from Burwell's trial counsel, Anthony D. Martin, in relation to this claim.  Further, the Court shall deny Burwell's ineffective assistance claim as it relates to counsel's preparation of witness Brenda Ramirez to testify.[2]

In his original § 2255 motion, Burwell argues that his trial counsel rendered ineffective assistance of counsel by failing to interview a key witness and failing to properly interview an alibi witness prior to trial.  Def.'s Memo. at 18.  Specifically, Burwell asserts:

> Counsel was supposed to have sent out investigator to alibi witness's house on "one" occasion despite Petitioner's plea that this witness was key to connection of DNA on one of the flash jackets found at one of the alleged stash houses. Counsel actually apologized for his negligence in the matter saying he "thought" the investigator was on top of the situation and that he interviewed each alibi witness properly. Counsel also stated that he has "messed up" and the issue would become an appeal issue due to the outcome of the case.  The second alibi witness was not interviewed properly either her testimony was not credible at all and was hurtful to defense having called a non-interviewed witnesses and almost being impeached in front of the jury.

*Id.*  In his Affidavit, Burwell indicates that the first witness referenced in his § 2255 motion is

---

[2] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents: Def.'s Mot. to Vacate Sentence ("Def.'s Mot."), ECF No. [822]; Def.'s Memo. in Support of Mot. ("Def.'s Memo."), ECF No. [822-1]; Govt.'s Opp'n to Def.'s Mot. to Vacate Sentence ("Govt.'s Opp'n"), ECF No. [827]; Def.'s Reply Brief ("Def.'s Reply"), ECF No [851]; Affidavit of Bryan Burwell ("Def.'s Affidavit"), ECF No. [870]; and transcripts of status hearings and trial.

Reon Holloway.  Holloway testified at trial that Burwell gave him a camouflage vest (identified as Exhibit "Brinkley 26") in fall 2002 or spring 2003 and that Holloway sold the vest to government witness Noureddine Chtaini around Christmas of 2003.  Tr. 7462:21—7468:6 (Jun. 16, 2005).  However, Burwell in his Affidavit indicates:

> Had my lawyer asked Holloway about my where-abouts on the date of May 27, 2004, Holloway would have informed the jury that he and I were together at Longfellow Street, on the morning in question as well as the remaining portion of that day.
>
> . . .
>
> I very specifically requested my lawyer to pursue Mr Holloway concerning my where-abouts, and he had informed me that he had complied.  I was not aware that counsel had not properly asked Holloway about where I was on the day in question until this witness was dismissed from the stand.  Following dismissing Holloway I asked my lawyer about why he had not asked Holloway about my alibi he informed me that he had not obtained that information and did not want to bring it up because he was unaware of what Holloway might say. This witness was a crucial part of my defense because he would have provided the jury with an alternative location of my where-abouts thereby raising reasonable doubt resulting in an acquittal.
>
> At an evidentiary hearing I am positive that my trial counsel would admit to this over-sight that ultimately led to my conviction.

Affidavit ¶¶ 2, 5.  With regard to the second witness, Burwell indicates that the witness whom he alleges trial counsel failed to properly interview was Brenda Ramirez.  Burwell also asserts in his affidavit, "I was unable to confirm her testimony after I prepared my Section 2255." *Id.* ¶ 4. Ramirez, a coworker of Burwell's wife, testified at trial that she had spoken with Burwell on the phone on June 12, 2004, around the time of the robbery of the Industrial Bank.  *See* Tr. 6805:21—6808:23 (Jun. 13, 2005).  The Court shall address Burwell's ineffective assistance of counsel claims related to witnesses Reon Holloway and Brenda Ramirez in turn.

The *Strickland* test applies to the issue of counsel's alleged failure to interview witnesses prior to trial. Indeed, while "[a]n attorney's failure to prepare for and challenge the testimony of a critical witness may be so unreasonable as to violate both prongs of the *Strickland* test," *Silva v. Woodford*, 279 F.3d 825, 833 (9th Cir. 2002), *cert. denied* 537 U.S. 942 (2002), the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland v. Washington*, 466 U.S. 668, 689 (1984). First, Burwell must establish that his counsel's alleged errors did not meet the objective standard of reasonableness under professional norms. *Strickland*, 466 U.S. at 688. "Where the case involves a failure to investigate, the 'particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *United States v. McDade*, 699 F.3d 499, 506 (D.C. Cir. 2012) (quoting *Strickland*, 466 U.S. at 691). If Burwell establishes deficiency in his counsel's performance, he also must establish that it is reasonably likely that the decision reached would have been different absent the errors. *Id.*

Turning first to witness Reon Holloway, Burwell asserts that his trial counsel was ineffective for failing to ask Holloway about Burwell's whereabouts on May 27, 2004, the date of one of the armed robberies, because Burwell claims that Holloway would have testified that Burwell and Holloway were together on Longfellow Street. Burwell was not separately charged with any counts related to the May 27, 2004, bank robbery. *See* Superseding Indictment (Feb. 15, 2005), ECF No. [175]. However, Burwell's participation in the May 27, 2004, bank robbery formed the basis of one of two predicate racketeering acts that supported his conviction under Count I of the indictment, conspiracy to conduct and participate, directly and indirectly, in the

4

affairs of an enterprise, through a pattern of racketeering activity ("RICO conspiracy"). *Id.* at 5-6.  Pursuant to 18 U.S.C. § 1961(5), in order to be convicted of a RICO conspiracy charge, a defendant must have participated in a pattern of racketeering activity including *at least two* acts of racketeering activity.  Here, Burwell's participation in the May 27, 2004, bank robbery was one of *only two* predicate racketeering acts required for Burwell's conviction under Count I. Burwell now asserts that he informed his trial counsel that Holloway would have testified that they were together on May 27, 2004, and, thus, would have provided an alibi for Burwell on that date.  Holloway was not asked about his whereabouts on May 27, 2004, either on direct or cross examination at trial. *See* Tr. 7463:21—7471:9 (Jun. 16, 2005).

The Court notes that Holloway testified on June 16, 2005.  On June 13, 2005, Burwell's trial counsel indicated on the record that Holloway ignored two subpoenas requiring him to appear to testify at trial.  Burwell's trial counsel explained that Burwell requested that Holloway be brought to Court to testify by the United States Marshals, which Burwell himself confirmed on the record.  Burwell's counsel also asserted that it was his determination that this course of action was not in Burwell's best interest.  Ultimately, Burwell's counsel put on the record that he would make the request that the Marshals bring Holloway to testify at his client's request but against his advice.  Tr. 6800:1—6801:2 (Jun. 13, 2005).  The Court indicated that it would not direct the Marshals to pick up Holloway and transport him to Court to testify unless it was verified that Holloway was previously properly subpoenaed to appear at trial and ignored the subpoena. *Id.* at 6801:3-7; Tr. 6931:9-14 (Jun. 14, 2005).  On June 14, 2005, the Court questioned whether Holloway was properly served with the subpoena after hearing from the investigator, David Jones, who attempted to serve him but instead left the subpoena at

Holloway's door after he was unable to locate Holloway and the woman who answered the door refused to accept the subpoena. *Id.* at 6944:3—6946:15. Nonetheless, it appears that the request to send the Marshals to pick up Holloway became moot as Burwell's counsel informed the Court that he had discovered that Holloway was detained at the Correctional Treatment Facility ("CTF"). In light of this information, the Court issued a come-up to require Holloway's transport from CTF to Court. *Id.* at 7040:10-15, 7042:9-10; Tr. 7209:11 (Jun. 15, 2005).

At the relevant time period, it appears that Holloway had charges pending against him in the Superior Court of the District of Columbia ("Superior Court") and was represented by attorney Richard Samad. *See* Tr. 6932:3-5, 6932:12-13, 6947:22-24 (Jun. 14, 2005). On June 14, 2005, Burwell's trial counsel also informed the Court of the following with relation to Holloway:

> This witness is being called against my advice. Mr. Burwell wants this witness called. And I have spoken with Mr. Holloway's attorney twice. My understanding is that Mr. Samad has advised Mr. Holloway not to testify. And I have also sent my investigator out no less than twice. And Mr. Holloway, as far as I can tell, is evading him.
>
> . . .
>
> I know he has a pending case in Superior Court. I've never spoken to Mr. Holloway, so that's another reason I don't want to call him. I have no clue what he's going to say when he takes the stand.

*Id.* at 6932:2-15. While trial counsel indicated that he had not spoken with Holloway, Jones, the defense investigator, indicated on the record that he had interviewed Holloway in April or early May. *Id.* at 6945:14-15.

With regard to Holloway's representation by Samad, the Court indicated on the record

that it would need to know the basis for Samad's objection to Holloway testifying in the instant action. The Court indicated that if Samad was asserting a Fifth Amendment claim on behalf of Holloway, then the Court would require Holloway to be represented by counsel in relation to this issue. *Id.* at 7040:20—7041:8, 7041:18-24, 7042:9-25. The Court further noted that it would conduct an inquiry on the record with regard to the Fifth Amendment issue if it was raised. *Id.* at 7042:9-25. On the morning of June 15, 2005, Holloway was transported to Court and the Court located Samad who was appearing across the street at Superior Court. Tr. 7209:11—7210:2 (Jun. 15, 2005). When Samad arrived in Court, the Court took a recess to allow Samad and Martin to speak to each other and with Holloway, who was in the cellblock. *Id.* at 7270:6— 7272:19. After the recess, Martin indicated that there was no Fifth Amendment issue with regard to the testimony of Holloway. *Id.* at 7273:10-14. After the Court took a break for lunch on June 15, 2005, the Court indicated that it would prefer to put Holloway on the stand that day so that he did not need to be transported back to Court on the following day since he was in a wheelchair. *Id.* at 7312:23—7313:1. However, later in the day, the Court indicated that it was unlikely that they would reach Holloway's testimony that day, and that the Court would issue a come-up for the following day to facilitate Holloway's transport to Court from CTF. *Id.* at 7366:6-16. Holloway was the first witness to testify on the morning of June 16, 2005. *See* Tr. 7461:12-17, 7462:21-25 (Jun. 16, 2005).

In evaluating Burwell's ineffective assistance of counsel claim, it would useful to the Court to have additional information not currently in the record. Specifically, it is unclear to the Court what information was provided by Burwell to his counsel with relation to Holloway's potential testimony, particularly as it relates to Burwell's whereabouts on May 27, 2004.

Further, the Court is unaware of what information was provided to Martin by his investigator and whether Martin was able to interview Holloway while he was in the cellblock prior to his testimony on June 16, 2005.  Accordingly, based on Burwell's representations in his original § 2255 motion and in his subsequent affidavit, the Court has determined that it shall require the government to obtain an affidavit from Burwell's trial counsel, Anthony D. Martin, indicating whether or not Burwell informed him that Burwell and Holloway were together on May 27, 2004, and, if so, what steps Martin took in response to this information as well as other information that relates to this issue.

Turning next to witness Brenda Ramirez, the Court finds that Burwell's claim for ineffective assistance of counsel related to this witness's testimony is without merit for the reasons described herein.  Ramirez, Burwell's wife's coworker, testified at trial that on June 12, 2004, the date of one of the armed bank robberies, she had both spoken with Burwell on the phone and had seen him in person.  *See* 6805:16—6815:4 (Jun. 13, 2005).  With relation to Ramirez's testimony, Burwell asserts that Ramirez "was not interviewed properly[,] either her testimony was not credible at all and was hurtful to defense having called a non-interviewed witnesses and almost being impeached in front of the jury."  Def.'s Memo. at 18.

The Court cannot conclude that Burwell's counsel's performance was either unreasonable or prejudicial.  First, a review of the record demonstrates that Burwell's counsel was not deficient in his presentation of Ramirez's testimony and he properly tied Ramirez's testimony to the charged June 12, 2004, bank robbery during closing.  Burwell's defense was that he was on the phone with Ramirez on or around the time of the bank robbery which testimony reflected occurred between 10:00 and 10:15 a.m. on June 12, 2004.  *See* Tr. 7874:13-14 (Jun. 20, 2005).

8

When Burwell's trial counsel called Ramirez as a witness, she testified on direct examination that on June 12, 2004, she spoke to Burwell and his wife on the phone around 10:00 or 10:30 a.m. and also around 2:00 p.m.  Tr. 6806:24—6807:24 (Jun. 13, 2005).  Further, she testified that she spoke with Burwell and/or his wife three or four times that day, and that she met Burwell in person that day around 3:00 p.m.  *Id.* at 6807:25—6808:8.

On cross examination, Ramirez testified that she had two phone conversations with Burwell on June 12, 2004, one in the early morning and one in the late afternoon.  *Id.* at 6812:4-10.  With regard to the morning phone call, Ramirez testified that she did not know the exact time that the conversation took place.  *Id.* at 6809:12-25.  She further testified during cross examination that she saw Burwell in person around 4:00 or 5:00 p.m., or sometime thereafter, on that same day.  *Id.* at 6812:11-14.  Ramirez then testified that she met up with Burwell again after Ramirez and Burwell's wife went to a club.  *Id.* at 6812:21—6813:6.  The prosecutor questioned Ramirez based on information that she provided during an interview on April 15, 2005, with FBI Agent Thomas Warter.  *See id.* at 6810:10-12.  Specifically, the prosecutor asked Ramirez whether she told Agent Warter that she had only met Burwell once prior to June 12, 2004, at a barbecue, even though she testified on cross examination that she had met him both at the barbecue and when he had come to her work.  *Id.* at 6810:13—6811:16.  The prosecutor also questioned Ramirez about whether she had disclosed to Agent Warter that she met Burwell in person on June 12, 2004, after Ramirez and Burwell's wife went to a club.  Ramirez testified she had not disclosed this information because Agent Warter did not ask.  *Id.* at 6813:3-8.

On redirect, Burwell's counsel again asked Ramirez about the time frame for the telephone call she received from Burwell on the morning of June 12, 2004.  Ramirez testified

and reaffirmed that she spoke with Burwell between 10:00 and 11:00 a.m. that day, the pertinent

time of the bank robbery.  *Id.* at 6814:18-23.  Burwell's counsel referenced Ramirez's testimony

during his closing argument:

> The other thing that you have to remember about the Industrial Bank robbery is
> the evidence that Mr. Burwell presented.  And that was the testimony of Brenda
> Ramirez.  Remember, Brenda Ramirez came in here under oath and she told you
> that she spoke to Bryan Burwell and Roslyn Burwell the morning of June 12,
> 2004.
>
> And I asked her, I said, how is that you remember that date? I mean, we just don't
> remember dates a year ago. And she said, oh, because that was the day of the
> Washington Pride Festival, the gay parade was going to take place that day, and I
> was going to attend the parade with them.
>
> How do you remember the time that you spoke to Bryan Burwell and Roslyn
> Burwell? I remember the time because Roslyn was going to go to the mall at
> 10:30.
>
> This is important, this is very important. And the government tried to get around
> that testimony by asking her on cross examination, so he called you early in the
> morning, it was really early? *Well, no, she stuck to her guns, she said it had to be
> between ten and 11. I'm pretty sure it was between ten and 10:30 because Roslyn
> was going to go to the mall.*
>
> *And why is that time frame so important?  Because Mollie Tillman, who was
> called by the government, took the stand.  And Ms. Tillman testified, as I recall,
> that the bank robbery at the Industrial Bank occurred between ten and 10:15.*

Tr. 7873:15—7874:14 (Jun. 20, 2005) (emphasis added).

Burwell's complaint centers around his allegation that if his counsel had better prepared

the witness, she would have given more convincing testimony regarding Burwell's alibi.  Based

on the record, the Court cannot conclude the Burwell's counsel's performance fell below an

objective standard of reasonableness based on Burwell's speculative claim that if his counsel had

prepared Ramirez to testify in some other manner, she would have testified in a way that was

more credible.   Indeed, both on direct and redirect examination, Burwell's counsel asked Ramirez about the time frame for the morning phone call that formed the basis of Burwell's alibi defense for the bank robbery which took place in that time period.   Burwell's trial counsel elicited the relevant facts related to Burwell's whereabouts on June 12, 2004, from Ramirez during her testimony and then used those facts in his closing to argue that Burwell could not have committed the June 12, 2004, bank robbery because he had an alibi.   The fact that the government attempted to undermine Ramirez's testimony during cross examination does not reflect an error on the part of Burwell's counsel.   Furthermore, on redirect, Burwell's counsel reinforced the time line that was relevant to Burwell's defense.   Accordingly, the Court concludes that Burwell's counsel provided assistance within an objective standard of reasonableness in his preparation of witness Brenda Ramirez who testified to the facts germane to Burwell's defense.

The Court also finds that Burwell's ineffective assistance of counsel claim fails because Burwell has not established that if his counsel had engaged in some other type of witness preparation with Ramirez, then the outcome of the case would have been different.   Indeed, the jury heard Ramirez's testimony that she received a phone call from Burwell and his wife on the morning of June 12, 2004, and after weighing that along with all the evidence presented over nine weeks, still found Burwell guilty of the charges related to June 12, 2004, bank robbery. Accordingly, the Court shall deny Burwell's ineffective assistance of counsel claim as it relates to his counsel's alleged failure to properly prepare Brenda Ramirez to testify on Burwell's behalf because the Court finds that Burwell's trial counsel's performance did not fall below an objective standard of reasonableness nor was Burwell prejudiced by his trial counsel's performance.

For the foregoing reasons, the Court finds no reason to set aside Burwell's conviction or sentence at this time.  The remaining claims in Burwell's [822] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence are DENIED IN PART and HELD IN ABEYANCE IN PART. Burwell's ineffective assistance of counsel claim related to counsel's alleged failure to properly prepare witness Brenda Ramirez to testify is DENIED.  The Court shall HOLD IN ABEYANCE its ruling on the ineffective assistance of counsel claim related to counsel's alleged failure to interview Reon Holloway regarding his knowledge of Burwell's whereabouts on May 27, 2004, in order to allow the government to provide an affidavit from Burwell's trial counsel as to this issue.

Pursuant to the instant Memorandum Opinion and accompanying Order as well as the Court's [854] Memorandum Opinion dated January 15, 2015, and accompanying [853] Order, all other claims in Burwell's [822] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence are denied.

An appropriate Order accompanies this Memorandum Opinion.


        */s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE